PITTSBURGH, C. & ST. L. R. CO. et al. v. KEOKUK & H. BRIDGE CO.

(Circuit Court of Appeals, Seventh Circuit.   January 14, 1895.)

EQUITY—JURISDICTION.

The I. C. R. Co. and three other railroad companies made a contract with a bridge company by which such railroad companies were granted the right in perpetuity to a certain bridge and agreed to pay monthly tolls, and, if such tolls fell below a certain sum, each agreed to pay one-fourth of the deficiency. The I. C. R. Co. executed the contract at the request of the P. and Pa. R. Cos., which agreed to assume all the liabilities of such contract, the same as if it had been specifically named, and made a part of a certain article of a prior lease by the I. C. R. Co. of its road to the P. and Pa. R. Cos., by which the lessee agreed to assume and carry out certain existing contracts for transportation over roads of other companies, and the Pa. R. Co. guarantied performance by the P. R. Co. By such contract the companies named agreed to keep books of account, which should exhibit the number of passengers and the number of tons of freight transported monthly over such bridge, which books should be at all times subject to the inspection of the bridge company. *Held,* that a court of equity has jurisdiction of a bill by the bridge company against the P. and Pa. R. Cos. to assert liability to complainant under defendants' agreement with the I. C. R. Co., and for an accounting with respect to alleged deficiency in earnings under such contract.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

J. T. Brooks and George Hoadley, for appellants.
Lyman Trumbull and Perry Trumbull, for appellee.

Before JENKINS, Circuit Judge, and BUNN and SEAMAN, District Judges.

JENKINS, Circuit Judge.   The affirmative answer by the supreme court to the question we submitted to them (155 U. S. 156, 15 Sup. Ct. 42) establishes the liability of the appellants.   The only question remaining to be considered arises upon the objection taken by the answer that the controversy between the parties is within the cognizance of the courts of common law only, and not of the courts of equity; and that, therefore, a court of equity is without jurisdiction to entertain the suit.   The principal contract was between the bridge company and the Columbus, Chicago & Indiana Central Railway Company (for brevity called the Indiana Central Company) and three other railway companies, by which the Bridge Company granted to the four railway companies in perpetuity the right to use its bridge over the Mississippi river upon payment of certain specified tolls.   The Indiana Central Company's line of railroad did not reach within 200 miles of the Mississippi river, but the railroads of the several railway companies parties to the contract, with the railroads of the Pittsburgh Company and the Pennsylvania Company, appellants, and with the bridge of the appellee company, formed a continuous line of transportation from Philadelphia to Des Moines, Iowa.   By the bridge contract the three railway companies which immediately connected with the bridge at the river agreed to keep books of account which should exhibit the number of passengers and the number of tons of freight trans-

ported monthly over the bridge, which book should be at all times subject to the inspection of the Bridge Company. It was further provided by the contract that if the aggregate net earnings for the whole freight transported by all railroad companies over the bridge should in any one year exceed $150,000, the surplus should be divided, one-half to the Bridge Company and one-half to the railway companies parties to the contract, to be divided among them in proportion to their respective tonnage over the bridge. If the net earnings for freight should fall below $80,000 in any one year, the railway companies should pay to the Bridge Company, each for itself and not for the other, one-fourth part of such deficiency. By an amendment to the contract it was provided that the net earnings of the bridge should be applied first to the payment of the interest on $1,000,000 of mortgage bonds of the Bridge Company, and then to the payment of a dividend not exceeding 8 per cent. in any one year upon $1,000,000 of capital stock, and that any net resources in excess of the sums necessary to pay such interest and dividends should belong to the railroad companies, parties to this contract, to be divided among them as provided in the contract. The contract in question was executed by the Indiana Central Company after the lease of its line to the Pittsburgh Company. The Pennsylvania Company was a party to that lease, guarantying to the Indiana Central Company the performance by the Pittsburgh Company of the obligations assumed. The execution of the bridge contract by the Indiana Central Company was at the request of the Pittsburgh and Pennsylvania Companies, who agreed to assume all the liabilities and obligations, and be entitled to all the benefits of the bridge contract, the same as if it had been specifically named and made part of the ninth article in the lease from the Indiana Central Railroad Company to the Pittsburgh and Pennsylvania Companies, dated January 22, 1869. The bill is filed directly against the Pittsburgh and Pennsylvania Companies to assert liability to the Bridge Company under their agreement with the Indiana Central Company, and for an accounting with respect to alleged deficiency in earnings under the contract.

The judiciary act of 1789 provided that "suits in equity shall not be sustained in either of the courts of the United States in a case where a plain, adequate and complete remedy may be had at law." 1 Stat. 82; Rev. St. § 723. This provision has been held to be merely declaratory, making no alteration whatever in the rules of equity upon the subject of legal remedy. Boyce's Ex'rs v. Grundy, 3 Pet. 210, 215; Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129. The adequate remedy at law which is the test of equitable jurisdiction in the federal courts is that which existed at the adoption of the judiciary act. Thus it was said by Judge Story in Pratt v. Northam, 5 Mason, 95, 105, Fed. Cas. No. 11,376:

"It has been often decided by the supreme court that the equity jurisdiction of the courts of the United States is not limited or restrained by the local remedies in the different states; that it is the same in all the states, and is the same which is exercised in the land of our ancestors, from whose jurisprudence our own is derived."

The same learned judge, in Gordon v. Hobart, 2 Sumn. 401, 403, Fed. Cas. No. 5,609, declared that state regulation respecting suits is wholly inapplicable to the general equity jurisdiction of the courts of the United States, which can in no manner be limited or controlled by state regulation. So, also, Judge Curtis, in Cropper v. Coburn, 2 Curt. 465, 472, Fed. Cas. No. 3,416, declares:

"When the judiciary act speaks of a plain, adequate, and complete remedy at law, it refers to the common law, not to the statutes of the states. Robinson v. Campbell, 3 Wheat. 212; Bodley v. Taylor, 5 Cranch, 191; U. S. v. Howland, 4 Wheat. 109; Boyle v. Zacharie, 6 Pet. 648. The equity jurisdiction of the courts of the United States is the same in all the states."

Mr. Justice Woods, while circuit judge, declared (Kimball v. Mobile Co., 3 Woods, 555, 565, Fed. Cas. No. 7,774):

"No law of Alabama providing another forum or another method of procedure could deprive the complainants of their right under the constitution and laws of the United States, or circumscribe the jurisdiction of the equity courts of the United States. Bennett v. Butterworth, 11 How. 669; Thompson v. Railroad Co., 6 Wall. 134; Case of Broderick's Will, 21 Wall. 503; Noyes v. Willard, 1 Woods, 187, Fed. Cas. No. 10,374; Benjamin v. Cavaroc, 2 Woods, 168, Fed. Cas. No. 1,300."

In Payne v. Hook, 7 Wall. 425, it was insisted that a federal court of chancery sitting in Missouri would not enforce demands against an administrator or executor when the court of the state invested with general chancery powers could not enforce similar demands, and that the complainant should be remanded for redress to the local court of probate. The court, however, overruled the objection, declaring at page 430:

"We have repeatedly held 'that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the states which prescribe the mode of redress in other courts, or which regulate the distribution of their judicial power.' If local remedies are sometimes modified to suit the changes in the laws of the states and the practice of their own courts, it is not so with equity. The equity jurisdiction conferred on the federal courts is the same that the high court of chancery in England possesses, is subject to no other limitation or restraint by state legislation, and is uniform throughout the different states of the Union."

In McConihay v. Wright, 121 U. S. 205, 7 Sup. Ct. 940, the equity jurisdiction of the federal court was challenged because a remedy at law was afforded by the statute of West Virginia. But the court overruled the plea, asserting:

"Admitting this to be so, it nevertheless cannot have the effect to oust the jurisdiction in equity of the courts of the United States as previously established. That jurisdiction, as has often been decided, is vested as a part of the judicial power of the United States in its courts by the constitution and acts of congress in execution thereof. Without the assent of congress, that jurisdiction cannot be impaired or diminished by the statutes of the several states regulating the practice of their own courts. Bills quia timet, such as the present, belong to the ancient jurisdiction in equity, and no change in state legislation giving in like cases a remedy by action at law, can, of itself, curtail the jurisdiction in equity of the courts of the United States. The adequate remedy at law, which is the test of equitable jurisdiction in these courts, is that which existed when the judiciary act of 1789 was adopted, unless subsequently changed by act of congress."

We think it beyond question that the subject of the action is within the cognizance of equity as recognized at the time of the adoption of the judiciary act. The case is likened by the learned counsel for the appellants to that of the grantee of mortgaged premises who has assumed the mortgage debt. If it be so, it is settled that, in the absence of state legislation or decision, the remedy of the mortgagor against the grantee is in equity. In Insurance Co. v. Hanford, 143 U. S. 187, 190, 12 Sup. Ct. 437, the court says:

"By the settled rule of this court the grantee is not directly liable to the mortgagee at law or in equity, and the only remedy of the mortgagee against the grantee is by bill in equity in the right of the mortgagor and grantor, by virtue of the right in equity of a creditor to avail himself of any security which his debtor holds from a third person for the payment of the debt."

It is true that the court in the course of the opinion observed that "the question whether the remedy of the mortgagee against the grantee is at law and in his own right, or in equity and in the right of the mortgagor only, is—as was adjudged in Willard v. Wood [infra], above cited—to be determined by the law of the place where the suit is brought." But that was not said as controlling the form of action in the federal court. The lex fori was there ascertained and asserted to determine the contract relation existing between the grantee and the mortgagee as affecting a subsequent agreement of the mortgagor with the grantee without the assent of the grantor. The case does not assume to decide that the remedy at law afforded by the law of the state would preclude a resort to a remedy in equity in the federal court if such remedy was appropriate. Nor does the case of Willard v. Wood, 135 U. S. 309, 10 Sup. Ct. 831, therein referred to, in any way conflict with the established doctrine of the federal courts. In that case the administrator of the assignee of the mortgage brought an action at law in the District of Columbia against the executrix of a purchaser of the equity of redemption to recover the mortgage debt remaining unsatisfied after foreclosure and sale of the mortgaged premises. The mortgaged premises were situated in, and the debt contracted in, the state of New York. It was insisted that, as by the law of that state the suit could be maintained either at law or in equity, the plaintiff had his election of remedy in the District of Columbia, where the suit was brought. The court held that the form of the remedy, whether at law or in equity, was governed by the lex fori,—the law of the District of Columbia,—and could only be in equity. The case is far from asserting that local law can control the form of remedy in the federal courts. It may well be that, if the law of a state in which the federal court is located and where suit is brought permits an action at law where the remedy was formerly in equity only, the federal court will entertain jurisdiction at law of such a suit upon the ground that the remedy so afforded is concurrent; but we fail in search of authority to the effect that such remedy excludes the ancient jurisdiction of equity. It was said by Lord Eldon in Eyre v. Everett, 2 Russ. 381:

"This court will not allow itself to be ousted of any part of its original jurisdiction because a court of law happens to fall in love with the same or a similar jurisdiction."

It becomes, therefore, unnecessary to review the several decisions of the supreme court of Illinois to which we are referred, and which it is asserted would uphold an action at law to assert the liability of the appellants upon the contract in question; because, if they so declare, the remedy at law, so afforded, would, we think, be at most concurrent, and not in exclusion of the undoubted jurisdiction in equity. We are of opinion that the judgment should be affirmed.