*38 Vroom.*        Styles v. Long Co.

HANNAH M. STYLES (PLAINTIFF BELOW), DEFENDANT IN ERROR, v. THE F. R. LONG COMPANY (DEFENDANT BELOW), PLAINTIFF IN ERROR.

Submitted December 5, 1901—Decided February 24, 1902.

1. The general rule that one who is not a party to a contract cannot maintain an action of tort in respect of the breach of a duty arising solely out of the contract, applies to stipulations imposing a continuing obligation.

2. In order to maintain an action of tort for breach of a contractual duty, the plaintiff must have the same *status* under the contract as would entitle him to maintain an action upon contract for a breach of its stipulations.

3. The statute of June 13th, 1898 (*Pamph. L., p.* 481), extends to contracts under seal the same rule which had already obtained with respect to simple contracts, so as to enable a third person, for whose benefit a contract is made, to maintain an action thereon in his own name although the consideration did not move from him. This rule is limited to those for whose benefit the contract was made, and is not extended to third parties who only indirectly and incidentally would be advantaged by its performance.

4. Where a contract is made by a public corporation for the construction of a public work, and incidentally contains stipulations intended for the safety of the public, an individual, who sustains personal injuries by reason of the non-performance of such stipulations, does not bear such a relation to the contractor as will support an action of tort against the latter, based upon the mere violation of the contractual duty. The injured party is remitted to his action for breach of such duty (if any) as may be imposed upon the defendant aside from the contract.

On error to the Passaic Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON, COLLINS and PITNEY.

For the plaintiff, *William I. Lewis.*

For the defendant, *De Witt C. Bolton* and *William B. Gourley.*

The opinion of the court was delivered by

PITNEY, J.  The action was in tort, to recover damages for personal injuries sustained by the plaintiff while crossing a temporary foot-bridge alleged to have been erected, controlled and maintained by the defendant over the Passaic river, at Main street, in Paterson.

The verdict and judgment were for the plaintiff.  The assignment of errors relates solely to the proceedings at the trial.

From the bill of exceptions it appears that the plaintiff introduced in evidence a contract, under seal, made before the occurrence in question, between the defendant and the board of chosen freeholders of the county of Passaic, by which the defendant had agreed to take down the old county bridge over the Passaic river, at Main street, and to erect a new structure in its stead.  The contract contained also the following stipulations:

*"Contractor's risk.*—The contractor must assume all risks from floods and storms, damage to persons and properties, and casualties of every description pertaining to the removal of the old bridge, the construction of the new bridge and the construction and use of the temporary foot-bridge, until the final acceptance of the new structure.

*"Protection of the public.*—The contractor shall provide, make and maintain all temporary fences, boardings, struttings, shorings, bridgeways or temporary arrangements necessary for or required in consequence of any of the works, all enclosures for materials, or works for the protection of the public, or for the protection of any building or property whatsoever near to or liable to be affected by the work, and shall sufficiently watch and light the same when necessary, both during the construction and after the completion of the work, until the acceptance thereof, and take such other precautions as may be required by the bridge committee.

*"Provision for the accommodation of pedestrians.*—The contractor shall provide and maintain for the accommodation of pedestrians during the construction of the new work a temporary foot-bridge on temporary piers, to be located near

the site of the present bridge, and for this purpose shall have the right to use the materials in the old bridge as far as necessary.

"While it is not intended to confine the contractor to any particular method, yet he will be required to submit his plan to the bridge committee for the latter's approval, but this approval shall not relieve the contractor from any responsibility for damage caused by the insufficiency of the crossing, or neglect of the contractor. The county engineer may at any time direct such changes or additions to this structure as in his opinion may be necessary and proper for the safety of the public, and the contractor shall make such changes without delay."

It was admitted that the new bridge was under construction by the defendant, pursuant to the contract, and that the temporary foot-bridge had been erected and was being maintained by the defendant in conformity with the contract. There was also evidence tending to show that an employe of the defendant was at or upon the bridge at the time of the occurrence in question, and that this man was under instructions to keep lights burning upon the bridge.

The plaintiff's evidence tended to show that while she, as one of the public, was crossing the bridge, at night, she was injured by falling down a step that was in the footway, and of which she had no notice; that there were no lights upon the foot-bridge, and that the place where she fell was in darkness, so that she could not see the step. It appeared in evidence that there were public street lights—electric arc lights—at one or two places near the bridge, but the plaintiff claimed that these threw no light on the place where she fell.

In this state of the evidence the trial court was requested to charge the jury as follows:

(1) That the obligation to light the temporary bridge arising out of the contract was only to protect the board of chosen freeholders of the county of Passaic from liability.

(2) That the board of chosen freeholders of the county of Passaic did not, by this contract, divest itself of its duty to light the bridge.

These requests were refused, and to this refusal exception was taken.

On the other hand, the court charged the jury, among other things, that "out of that contract arises the obligation upon which the defendant is sued in this case. Its obligation under this contract was to provide and maintain a foot-bridge for the accommodation of pedestrians while the main bridge was being constructed, and sufficiently to light the same so as to make it reasonably safe for public travel." To this part of the charge exception was taken by the defendant.

From the language just quoted, and from the context, it is quite clear that the trial court submitted to the jury the contractual obligation to light the foot-bridge, arising out of the defendant's agreement with the board of freeholders, as forming in and of itself a sufficient basis for imposing upon the defendant the duty of exercising care towards the public, for breach of which duty the plaintiff, as one of the public, could maintain an action of tort; and also that the stipulations of the contract were adopted as the sole criterion for determining what precautions were necessary to be taken by the defendant in order to fulfill the duty in question.

Upon the argument in this court it was insisted, in behalf of the defendant, that the court below had misconstrued the contract, and that the obligation to light the temporary work, found under the heading "protection of the public," could not, by a fair interpretation, be referred to the foot-bridge mentioned in the subsequent paragraph. We have not found it necessary to pass upon this question, and for present purposes have assumed the construction adopted by the trial court to be correct.

Nor are we now concerned with those questions which relate to the liability or non-liability of the defendant independent of the contract. The effect of the charge was to confine the attention of the jury to the contract alone, both as imposing a duty upon the defendant and as defining what that duty was; so that they were constrained to find the defendant guilty of actionable negligence if it had failed to sufficiently light the bridge so as to make it reasonably safe

for public travel; and this on the sole ground of stipulations contained in the contract between the defendant and the board of freeholders.

In this, we think, the trial court erred. The general rule is entirely well settled that one who is not a party to a contract cannot sue in respect of a duty arising out of the contract. This rule was applied and the reasons for it expounded in this court in the case of *Marvin Safe Co.* v. *Ward,* 17 *Vroom* 19, the circumstances of which were quite similar to those of the present case. It is true that in the case cited the contract had been fully performed by the defendant, while in the present case there were stipulations imposing a continuing obligation. But there seems no reason for drawing a distinction on this account, and the adjudicated cases apply the rule as well to contracts imposing a continuing obligation as to those whose stipulations have been fully executed.

Other New Jersey cases recognizing the rule above stated are *Kahl* v. *Love,* 8 *Vroom* 5; *Appleby* v. *State,* 16 *Id.* 161; *Van Winkle* v. *American Steam Boiler Insurance Co.,* 23 *Id.* 240, 245; *Clyne* v. *Helmes,* 32 *Id.* 358, 368.

It is claimed that, by reason of the fact that the contract here in question was made by a public corporation for the construction of a public work, and contains stipulations intended for the safety of the public, the plaintiff, as one who has sustained personal injuries by reason of the non-performance of such stipulations, is entitled to maintain an action of tort against the defaulting contractor. Upon this point the statute approved June 13th, 1898 (*Pamph. L., p.* 481), is invoked. It is entitled "An act to regulate the practice of courts of law," and enacts, in substance, that "it shall be lawful for any person for whose benefit any contract may have been made, whether said contract be under seal or not, to maintain an action thereon in his own name, and to use the same by way of, and as a matter of, defence to any action in his own name, at law or in equity, notwithstanding the consideration of such contract did not move from such person."

Prior to this enactment the rule of law was well established that in cases of simple contracts, if one person made

a promise to another for the benefit of a third, the latter could maintain an action upon it, although the consideration did not move from him. It was equally well settled that in cases of contracts under seal the rule was otherwise. *Joslin* v. *New Jersey Car Spring Co.*, 7 *Vroom* 141; *Cocks* v. *Varney*, 18 *Stew. Eq.* 72; *Crowell* v. *Hospital of St. Barnabas*, 12 *C. E. Gr.* 650; *Katzenbach* v. *Holt*, 16 *Stew. Eq.* 536, 550; *Jordan* v. *Laverty*, 24 *Vroom* 15.

It was in view of these familiar rules of law and these well-known adjudications that the act of 1898 was passed. It was intended to extend to contracts under seal the same rule which already obtained with respect to contracts not under seal. By its title and by the terms of the enactment it has relation merely to the parties by whom and in whose name a contract may be enforced in an action founded upon the contract, or in a defence based thereon.

But the rule entitling third parties to maintain an action for breach of the contract is limited to those for whose benefit the contract was made, and is not extended to third parties who, indirectly and incidentally, would be advantaged by its performance. 15 *Encycl. Pl. & Pr.* 516, and cases cited. It was on this ground, as well as on the ground of the contract being under seal, that in *Crowell* v. *Hospital of St. Barnabas, ubi supra*, it was adjudged by our Court of Errors and Appeals that a prior mortgagee was not entitled to enforce payment of the mortgage debt by personal decree against the grantee of the mortgagor, such grantee having simply assumed the payment in the deed by which the property was conveyed to him. This will appear in the reasoning of the opinion delivered by Mr. Justice Depue for the court.

The cases in which third parties not specially designated at the time of the making of the contract are held entitled to avail themselves of its stipulations rest upon special features, such as the offering of a prize or reward. *Sergeant* v. *Stryker*, 1 *Harr.* 464; *Furman* v. *Parke*, 1 *Zab.* 310; *Mayor, &c., of Hoboken* v. *Bailey*, 7 *Vroom* 490; *Whitehead* v. *Burgess*, 32 *Id.* 75. In such cases the contract arises, not from the mere making of the conditional offer, but from its acceptance, and

the performance of the service by some person who brings himself within the offer; the service thus performed being the consideration which alone supports the contract. The principle underlying these cases gives no support to the claim that, where a contract is made by a public corporation with one of its agents for the performance of a public work, any citizen especially interested in the enforcement of the contract may maintain an action upon it.

The true distinction was clearly stated by Mr. Justice Depue, speaking for the Court of Errors and Appeals, in *Appleby* v. *State,* 16 *Vroom* 165, where he said: "A duty, the breach of which is an actionable wrong, may arise from a contract, or be imposed by positive law, independent of contract. In the first case, the party to the contract only can sue; in the other case, any person injured may sue, if he be one of the class of persons for whose benefit the duty is imposed." In that case the liability was enforced for the benefit of one of the general public; but the duty was imposed by positive law, independent of contract. The recent case of *Fielders* v. *North Jersey Street Railway Co., ante p.* 76, decided in this court, belongs in the same category. There the traction company was held liable for a negligent omission to keep in repair a street pavement, the duty to repair having been imposed by a general municipal ordinance affecting all street railways, and passed under due legislative authority for their regulation, thus having the effect of positive law. The court held that the ordinance was evidential upon the question of the duty resting upon the company; and that it was not a matter of contract between the municipality and the traction company, but was a police regulation, imposing a general public duty upon the company.

We take it to be quite plain that the rule that no one can sue upon a contract unless he is a party to it, cannot be evaded by bringing what is really an action for breach of contract in the form of an action of tort. 15 *Encycl. Pl. & Pr.* 504. It follows that, in order to maintain an action of tort for breach of a contractual duty, the plaintiff must have the same *status* under the contract as would entitle him to

maintain an action upon contract for a breach of its stipulations. If therefore the act of 1898, above referred to, can be so extended, by construction, as to entitle one not a party to a contract under seal to maintain an action of tort in respect of a breach of duty arising out of the contract, the right of action must at least be limited to those who would be entitled, in an action strictly upon the contract, to sue for a breach of its provisions.

The adjudicated cases, as well as the reason of the matter, fully sustain the propriety of exempting one who is employed by a public corporation to perform works for the public benefit, under a contract which imposes a continuing obligation, from an action of tort at the suit of an individual who suffers injury by reason of its non-performance, so far as such action is based upon the contract itself, the party injured being remitted to his action for breach of such duty, if any, as may be imposed upon the defendant independent of the contract. Besides the cases already cited from our own courts, the following decisions in other jurisdictions are worthy of mention:

In *Nickerson* v. *Bridgeport Hydraulic Co.*, 46 *Conn.* 24; *S. C.*, 33 *Am. Rep.* 1, where a water company had contracted with the city of Bridgeport to supply the city hydrants with water, and owing to their neglect to do so the fire department was not able to extinguish a fire, it was held that the water company was not liable in damages to the owner of the property for the neglect to supply the water.

In *Davis* v. *Clinton Water Works*, 54 *Iowa* 59, cited in note to 33 *Am. Rep.* 5, the facts were quite similar to those in the Connecticut case, and the defendant was held not liable, on the ground that the plaintiff was a stranger to the contract between the defendant and the municipal corporation, and the mere fact that she might find benefits therefrom, by the protection of her property, in common with all other persons whose property was similarly situated, did not make her a party to the contract, or create a privity between her and the defendant. The court said: "The city, in exercise of its lawful authority to protect the property of the people,

may cause water to be supplied for extinguishing fires and for other objects demanded by the wants of the people. In the exercise of this authority it contracts with defendant to supply the water demanded for these purposes. The plaintiff received benefits from the water thus supplied in common with all the people of the city. These benefits she received just as she does other benefits from the municipal government, as the benefits enjoyed on account of improved streets, peace and order enforced by police regulations and the like. It cannot be claimed that the agents or officers of the city, employed by the municipal government to supply water, improve the streets or maintain good order, are liable to a citizen for loss or damages sustained by reason of the failure to perform their duties and obligations in this respect. They are employed by the city and responsible alone to the city. The people must trust alone to the municipal government to enforce the discharge of duties and obligations by the officers and agents of that government. They cannot hold such officers and agents liable upon the contracts between them and the city."

To the same effect are *Foster* v. *Lookout Water Co., 2 Lea* 42, cited in note to 33 *Am. Rep.* 8; *Ferris* v. *Carson Water Co.,* 16 *Nev.* 44; *S. C.,* 40 *Am. Rep.* 485, and *Beck* v. *Kittanning Water Co.,* 11 *Atl. Rep.* 300 *(Pennsylvania Supreme Court).*

In our opinion, therefore, the plaintiff in the present action, as one of the public for whose general benefit and protection the contract in question was made, does not sustain such a relation to the defendant as a contracting party that she can maintain her action of tort by reason of a mere violation of the contractual duty. The charge of the trial court to the jury was in this respect erroneous, and the error was manifestly prejudicial.

The judgment should be reversed, and a *venire de novo* awarded.