## GIBSON v. VICTOR TALKING MACH. CO.

(District Court, D. New Jersey.   March 21, 1916.)

1. PRINCIPAL AND AGENT ⊗⟹145(2)—BREACH OF CONTRACT UNDER SEAL—RIGHT OF ACTION AGAINST THIRD PERSON.

   Parol evidence is not admissible to show that one of the parties to a contract under seal acted as agent for another, for the purpose of charging the latter or permitting him to sue and a defendant sought to be so charged may raise the same question by demurrer, where a copy of the contract is made a part of the declaration.

   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 514, 516, 517; Dec. Dig. ⊗⟹145(2).]

2. COURTS ⊗⟹372(4)—FEDERAL COURTS—STATE LAW AS RULE OF DECISION.

   Whether or not an action at law may be maintained in a federal court by a party to a contract against one who has assumed the obligations of the other party thereto is to be determined by the law of the state where the action is brought.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 979; Dec. Dig. ⊗⟹372(4).]

3. CONTRACTS ⊗⟹187(1)—ACTION FOR BREACH—RIGHT OF ACTION AGAINST PERSON ASSUMING CONTRACT.

   Under the law of New Jersey such an action may be maintained at law, where it is alleged and shown that the contract of assumption by defendant was made for the benefit of plaintiff.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 798, 799, 801–804, 806, 807; Dec. Dig. ⊗⟹187(1).]

At Law.   Action by Robert L. Gibson against the Victor Talking Machine Company.   On demurrer to second amended declaration. Overruled.

Ernest Howard Hunter, of Philadelphia, Pa., for plaintiff.
French & Richards, of Camden, N. J., for defendant.

HAIGHT, District Judge.   This matter is before the court upon a demurrer to the plaintiff's second amended declaration.   Twenty-nine grounds of demurrer are assigned.   All of them, except those hereinafter specially referred to, are the result, I think, of a misconception on the part of defendant's counsel of the nature and purpose of this action.   This, however, is not surprising, in view of some of the allegations of the declaration and the attitude which plaintiff's counsel took upon a previous demurrer regarding the nature of the action. He then argued that the action was one in tort, and now that it is one on contract.   The cause of action set forth in the present declaration, as in those preceding, is essentially one to recover damages for a breach of a contract.   It is in no sense an action in tort.   The plaintiff does

---

⊗⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not sue for an infringement, or seek to recover damages therefor. He sues because, as it is alleged, the defendant has failed to prosecute suits to prevent infringements which, it is claimed, it was bound by contract to do. He does not seek to recover any damages from the American Graphophone Company for infringement or otherwise, but he claims that the American Graphophone Company has infringed the patents mentioned in the contract; that it was the duty of the defendant, by virtue of the contract, to have instituted and prosecuted suits to prevent such infringements; and that it not only failed to do so in good faith, but it entered into a contract with the American Graphophone Company whereby it licensed that Company, in effect, to use the subject-matter of the patents mentioned in the agreement, and thus precluded itself from instituting suits for such infringements. Hence the question as to whether the agreement, which it is alleged that the defendant has broken, is an assignment of the patents therein mentioned, or merely a license, is immaterial.

I think that the declaration clearly alleges that the defendant has failed to institute suits which were *necessary* to enjoin material infringements. It alleges that the agreement was to institute any and all suits necessary for enjoining any and all infringements, and then alleges that the "defendant has not performed its duty in that regard, and has neglected to institute and prosecute *such suits* to prevent any and all infringements." This is clearly an allegation that suits were necessary, and that the defendant has not instituted them. I see no merit in the contention that the declaration is faulty because it fails to allege that the patents mentioned in the contract do not infringe certain other patents, which, in the agreement, were stated to be owned by the assignee or licensee. If, as alleged in the declaration, it was agreed that suits should be instituted to prevent infringements of the patents assigned or licensed, it is immaterial whether those patents infringed any others, because the agreement on behalf of the licensee or assignee was to institute suits to prevent infringement of the former. It is readily conceivable why the clause of the agreement upon which this suit is based was inserted, and that a failure to perform it could cause the plaintiff substantial damages. These damages may be nominal or substantial, depending upon the proof in the case.

As a consideration for the assignment of the patents or the granting of licenses thereunder, as the case may be, the plaintiff and the party to whose rights he has succeeded were to receive royalties on the number of patented articles sold by the assignee or licensee. The number of such sales, and consequently the amount of the royalties which the plaintiff was entitled to receive under the contract, would undoubtedly be affected by the extent to which the assignee or licensee maintained exclusive control of the right to manufacture and sell the patented articles. If he alone could place the patented article upon the market, the sales would undoubtedly be greater than if there were a number of other people selling the same, or a similar article. I am persuaded that the plaintiff's damages would be limited in this respect, and confined to what he could show, with reasonable certainty, he

had lost in royalties in the manner before mentioned. It therefore by no means follows that the specification of damages mentioned in the declaration is the proper measure. But this allegation, as well as some others in the declaration, may be treated as surplusage, and therefore as unbailable to the defendant on demurrer.

It is also urged that if the contract sued upon was not an assignment of the patents, but merely a license, that then the requirement thereof—that suits be brought for infringements by the licensee—is invalid, because a licensee has no right to bring an action for infringement in his own name. Without considering other answers, which suggest themselves, to this objection, it is sufficient to say that the agreement provides that the plaintiff shall be joined as cocomplainant.

It is also urged that the agreement merely calls for the *institution* of suits, and that the declaration proceeds on the theory that the defendant failed to *institute* and *prosecute*. I think this objection is frivolous. When the parties used the word "institute," it is entirely clear that they intended that the suits to be instituted should be prosecuted. The important grounds of demurrer are those which have to do with the allegations of the declaration which connect the defendant with the contract upon which this suit is brought. This contract was originally entered into between the plaintiff and another on one side, and one Eldridge R. Johnson on the other. The defendant was not a party thereto. The declaration alleges that, when the contract was made, Johnson was engaged in promoting the organization of the defendant corporation for the purpose of conducting the business of manufacturing and selling, among others, the articles covered by the patents mentioned in the agreement, and that it was the understanding of the parties to the agreement, at the time it was entered into, that the license was not to be exercised by Johnson personally, but was to be assumed and exercised by the defendant corporation as soon as it was organized, and that thereafter, upon the organization of the defendant, in pursuance of such understanding, the defendant took over the said license and assumed all of the obligations thereof. The agreement was in writing and under seal. There is no mention therein of the defendant's proposed connection with the contract, or of Johnson's agency. Nor is the contract, on its face, ambiguous, or in any way uncertain. It purports to be made between Johnson on one side, and the plaintiff and one Jones on the other. The averments of the declaration also make it evident that the defendant corporation was not an undisclosed principal.

[1] It is insisted on behalf of the defendant that the averments of the declaration just mentioned, respecting the understanding of the parties, will not support an action against the defendant because they call for parol contemporaneous evidence, which would be inadmissible to vary the written contract, and further that the allegations regarding the assuming of the contract by the defendant will not support an action *at law* against it, but that the plaintiff's remedy, if any, against the defendant, on account of the latter's assuming the obligations of the contract, is in equity. The fact that the corporation was not in existence at the time the contract was made is, I think, not material in

view of the later allegations of the declaration, which sufficiently indicate a ratification of the action of the agent, if agency can be shown. The important question is whether an action can be maintained on a sealed instrument against one not a party thereto, and who can only be shown to be a party (that is, that the contract was made on his behalf by an agent) by parol evidence. Whatever conflict there may be in the cases regarding the right to show, by parol evidence, that one of the parties to a written contract, not under seal, acted as an agent for another (whether disclosed or undisclosed as principal) for the purpose of charging or permitting the latter to sue, there is no doubt that such evidence cannot be received where the contract sued upon is under seal. New Jersey Steam Navigation Co. v. Merchants Bank, 6 How. 343, 380, 12 L. Ed. 465; Whitney v. Wyman, 101 U. S. 392, 395, 25 L. Ed. 1050; Borcherling v. Katz, 37 N. J. Eq. 150; Schenck v. Spring Lake Beach Improvement Co., 47 N. J. Eq. 45, 19 Atl. 881; cases cited 31 Cyc. 1576 and 1658.

Nor do I perceive any reason why this question cannot be raised and disposed of on demurrer by the party who could object to the admission of the evidence, when a copy of the contract is attached to and made a part of the declaration, as in this case, for, in such cases, the declaration shows, on its face, that there is no enforceable cause of action. It has been so raised in Le Grand Co. v. Richman, 82 N. J. Eq. 481, 91 Atl. 723, and Schenck v. Spring Lake Beach Improvement Co., supra. If, therefore, there were no further averments in the declaration upon which to connect the defendant with the obligations of the contract, it would follow that the demurrer should be sustained. But the declaration contains the additional allegations before mentioned that the defendant has assumed all of the obligations of the contract.

[2] It is urged, however, on behalf of the demurrant that an action *at law* cannot be maintained in a federal court by one in his own name, against another whose obligations, if any, arise simply from the assuming of the contract made between the plaintiff and third person. The decision of the Circuit Court of Appeals of the Second Circuit in Goodyear Shoe Machinery Co. v. Dancel, 119 Fed. 692, 56 C. C. A. 300, is cited in support of this contention. That was an action at law to recover certain unpaid license fees alleged to be due to plaintiff's intestate under a contract made between the latter and defendant's assignor, the defendant having agreed to assume all of the obligations of the assignor to pay such license fee. It was held that the action was not maintainable at law, upon the theory that the effect of the agreement between the defendant and its assignor was merely to create the relation of principal and surety between them, but no direct obligation of the defendant (the assignee) to the plaintiffs' intestate, and that "according to the decisions in Second National Bank of St. Louis v. Grand Lodge of Free & Accepted Masons of Missouri, 98 U. S. 123 [25 L. Ed. 75], Cragin v. Lowell, 109 U. S. 194 [3 Sup. Ct. 132, 27 L. Ed. 903], and Keller v. Ashford, 133 U. S. 610 [10 Sup. Ct. 494, 33 L. Ed. 667], the plaintiffs could not maintain an action at law against the defendant upon the covenant." It was held, however, that the plaintiff would have been entitled to enforce in equity the

agreement of the defendant with its assignor, upon the equitable doctrine that a creditor may have the benefit of any obligation or security given by the principal to the surety for the satisfaction of the debt.

It was evidently urged in that case (although not so stated in the opinion) that by the law of New York, where the federal court in which the action was brought was located, an action could be maintained at law by the plaintiffs against the defendant on such an agreement, for Judge Wallace, who wrote the opinion of the court, said:

"It is hardly necessary to state that the law of the remedy is not to be determined by the decisions of the courts of the state in which the action was brought, and that neither the decisions of its courts nor the statutes of New York can confer authority upon the federal courts sitting within that state to exercise equitable jurisdictions in actions at law. State Legislatures cannot abolish in the federal courts the distinctions in actions at law and in equity by abolishing such distinctions in their own courts."

Undoubtedly the general proposition thus enunciated is correct. But if the point above mentioned regarding the law of New York was urged in that case, I do not think that the court, in relying upon the general rule, gave due effect to what I conceive to be the rule laid down for such cases by the Supreme Court in Willard v. Wood, 135 U. S. 309, 313, 10 Sup. Ct. 831, 34 L. Ed. 210, Id., 164 U. S. 502, 518, 17 Sup. Ct. 176, 41 L. Ed. 531, and Union Life Ins. Co. v. Hanford, 143 U. S. 187, 190, 12 Sup. Ct. 437, 36 L. Ed. 118. Willard v. Wood was originally an action at law brought in the District of Columbia by an administrator of an assignee of a mortgage against the executrix of a grantee of the mortgaged premises, who had assumed, in the conveyance from the mortgagor, the payment of the plaintiff's mortgage. The land covered by the mortgage was located, and all the instruments were executed, in the state of New York. In discussing what law was to be applied, Mr. Justice Gray, who delivered the opinion of the Supreme Court, said (135 U. S. 312, 10 Sup. Ct. 832, 34 L. Ed. 210):

"Assuming that the mortgagee has acquired by the law of New York a right to enforce such an agreement against a grantee of the mortgagor, the form of his remedy, whether it must be in covenant or in assumpsit, at law or in equity, is governed by the lex fori, the law of the District of Columbia, where the action was brought."

It might be considered, in view of the general rule prevailing in the federal courts regarding the distinction between actions at law and in equity, that by this reference to the lex fori the court did not mean that the question of whether a case such as that is to be brought in equity or at law is to be governed by the law of the state in which a federal court is held, but rather by the law pertaining generally to federal courts, when that differs from the state law, were it not for the subsequent decision in Union Life Ins. Co. v. Hanford. It was there said by Mr. Justice Gray, referring to Willard v. Wood, that the remedy of the mortgagee is to be determined by the law "of the place where the suit is brought." The suit in that case was brought in the Circuit Court of the United States for the Northern District of Illinois. He then proceeded to examine the law of Illinois, and found that under it the mortgagee might sue at law a grantee who, by the terms of an absolute conveyance from the mortgagor, had assumed the payment

of the mortgage debt. It was then said by Mr. Justice Gray (143 U. S. 190, 12 Sup. Ct. 438 [36 L. Ed. 118]):

"According to that view, the grantee, as soon as the mortgagee knows of the arrangement, becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable to the latter, and the relation of the grantee and the grantor towards the mortgagee, as well as between themselves, is thenceforth that of principal and surety for the payment of the mortgage debt."

It was held that, as the mortgagee had extended the time for the grantee to pay the mortgage debt, the original mortgagors were relieved from any liability on their bond; Justice Gray saying, at the conclusion of the opinion:

"Under the law of Illinois, *which governs this case*, the mortgagors were thereby discharged from all liability on the notes, and the Circuit Court rightfully refused to enter a deficiency decree against them."

If it was meant by the Supreme Court, when it used in Willard v. Wood the words "lex fori," and in Union Ins. Co. v. Hanford "the law of the place where the suit is brought," that the law of the federal courts, as distinguished from the law of the state in which a federal court is held, is to govern, it is difficult to understand why it was found necessary in the Hanford Case to ascertain what the law of Illinois was, and to apply that law, so far as it determined the legal relations between the parties in that suit. It was stated in the Hanford Case that it was the settled law of the Supreme Court that the grantee is not directly liable to the mortgagee at law or in equity, and that the only remedy of the mortgagee against the grantee is by bill in equity in *the right of the mortgagor and grantor,* by virtue of the right in equity of a creditor to avail himself of any security which his debtor holds from a third person for the payment of the debt. And it was also said that, in view of that rule, it would be difficult to hold that the granting of an extension of time to the grantee would release the mortgagor, "but the case at bar does not present itself in that aspect." There then followed the above-mentioned statement of the rule regarding the law of the place where the suit is brought, and a discussion of the law of Illinois. It thus appears that the Supreme Court considered the law of the federal courts inapplicable, but determined the rights of the parties according to the laws of the state where the federal court, in which the suit was brought, was located.

This view of the effect of those two decisions of the Supreme Court, and of the later one in Willard v. Wood, was entertained by the Circuit Court of Appeals of the Seventh Circuit in Adams v. Shirk, 105 Fed. 659, 663, 44 C. C. A. 652, and in Central Electric Co. v. Sprague Electric Co., 120 Fed. 925, 57 C. C. A. 197. In the latter of these cases it was held that an action at law might be maintained in a federal court sitting in Illinois by a creditor of a concern directly against another concern which had assumed the payment of the debts of the original debtor. To the same effect is Bethlehem Iron Co. v. Hoadley, 152 Fed. 735. (C. C. D. R. I.). See also Rea v. Barker, 135 Fed. 890. (C. C. D. Or.). In Pittsburg, C. & St. L. R. Co. v. Keokuk & H. Bridge Co., 68 Fed. 19, 15 C. C. A. 184 (C. C. A. 7th Cir), in which

the opinion was written by the same judge who wrote the opinion in the Central Electric Co. Case, Union Ins. Co. v. Hanford and Willard v. Wood were examined and discussed, and it was held, while recognizing the above-mentioned effect of those cases, that even though, by the law of the state in which the federal court was located, an action might be maintained at law, yet, as the subject-matter of the action was within the cognizance of equity, the state rule was only concurrent and could not exclude the ancient jurisdiction of equity. The suit in that case was in equity, and it was urged that, because the local law permitted a suit at law, the suit in equity in the federal court would not lie.

The rule which I thus conceive to have been laid down by the Supreme Court, in the cases before mentioned, for suits of this kind, is quite readily reconcilable with the general rule that the state practice will not be followed in the federal courts, so as to permit a suit founded upon a right that is purely equitable, to be tried at law (which is referred to in the Goodyear Shoe Machinery Case, supra). Where the right is given to one to sue at law on a contract made between others to which he is not a party, as where the person sued has assumed the performance of an obligation due from one party to a contract to the person suing, it is upon the theory that there exists a direct liability in his own right and not in the right of another. Therefore, if in any given state the substantive rights of the parties are so fixed, and such rights can ordinarily and according to the course of the common law, as where there is a direct contractual liability, be enforced in an action at law, a federal court, in entertaining such an action, would not be exercising purely equitable jurisdiction in an action at law. It is not the same as a case where the state statute or practice gives the right to enforce a purely equitable right in an action at law.

[3] I think, therefore, that if by the law of New Jersey the plaintiff might maintain an action *at law* against this defendant on its agreement to assume the obligations of the contract made between the plaintiff and Johnson, such an action may be maintained in this court. It is the rule in New Jersey, settled by a long line of decisions, that in cases of simple contracts, if one person makes a contract with another for the benefit of a third, the latter may maintain an action *at law* upon it, although the consideration did not move from him. Joslin v. New Jersey Car Spring Co., 36 N. J. Law, 141 (Sup. Ct.); Jordan v. Laverty, 53 N. J. Law, 15, 20 Atl. 832 (Sup. Ct.); Styles v. Long Co., 67 N. J. Law, 413, 417, 51 Atl. 710 (Sup. Ct.); Id., 70 N. J. Law, 301, 57 Atl. 448 (Ct. E. & A.); Holt v. United Security Life Ins. Co., 76 N. J. Law, 585, 589, 72 Atl. 301, 21 L. R. A. (N. S.) 691 (Ct. E. & A.); Fleming v. Reed, 77 N. J. Law, 563, 567, 72 Atl. 299 (Ct. E. & A.); Chambers v. Philadelphia Pickling Co., 79 N. J. Law, 1, 75 Atl. 159 (Sup. Ct.), affirmed 83 N. J. Law, 543, 83 Atl. 890 (Ct. E. & A.); Collier v. De Brigard, 80 N. J. Law, 94, 77 Atl. 513 (Sup. Ct.). This rule has been extended by statute to contracts under seal. P. L. 1903, p. 541, § 28.

Crowell v. Hospital of Saint Barnabas, 27 N. J. Eq. 650, which is cited by defendant, is not opposed to this rule, but, on the other hand,

the rule was recognized, but held inapplicable, both because the contract was under seal and because an agreement by the grantee to assume the payment of a mortgage was held not to have been made for the benefit of the mortgagee. See Styles v. Long Co., 67 N. J. Law, 413, 51 Atl. 710, supra. Nor do I think this rule is opposed to the doctrine of the Supreme Court of the United States, to be deduced from Hendrick v. Lindsay, 93 U. S. 143, 23 L. Ed. 855, National Bank v. Grand Lodge, 98 U. S. 123, 25 L. Ed. 75, Savings Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621, Cragin v. Lovell, 109 U. S. 194, 3 Sup. Ct. 132, 27 L. Ed. 903, Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667, and German Alliance Ins. Co. v. Home Water Co., 226 U. S. 220, 33 Sup. Ct. 32, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000. It is not sufficient under the New Jersey rule that the plaintiff have an indirect interest in the performance of the contract which he sues upon and to which he is not a party, or that he may be benefited by the performance of the contract, but he can only maintain an action when the contract is made for his direct benefit. Styles v. Long Co., 70 N. J. Law, 305, 57 Atl. 448. This is the doctrine, as I understand it, of the United States Supreme Court. Its decisions recognize the right of a third party to sue on a contract in which he is given a direct interest, or which was made for his direct benefit. The divergence of view, if any, exists rather, I think, regarding the application of the rule than the rule itself.

The remaining question, therefore, is whether the assumption agreement (which must be relied upon to entitle the plaintiff in this suit to recover) is one which was made for the benefit of the plaintiff. The averments of the declaration sufficiently set forth a consideration, as between Johnson and the defendant, for the making of the contract. Without attempting to review the cases in which it has been held that the assumption or agreement to pay a debt due to the plaintiff from one of the parties to the agreement, or all of the debts and liabilities of one of the parties to the contract (among which class that of a plaintiff is included), is a contract made for the benefit of such plaintiff and entitled him to sue thereon (a number of the New Jersey cases above cited so hold), and those cases which hold the contrary (among the latter are some of the cases in the United States Supreme Court above cited), I think it sufficient to say that the assumption agreement set forth in the declaration in this case, taken in connection with the other averments of the declaration, in my judgment indicates that it was made for the sole benefit of the plaintiff in this action and entitles him to sue at law thereon. Of course, this view may be subject to change when the actual proofs are submitted.

It follows, therefore, that the demurrer must be overruled, with costs. The order shall provide that the defendant may plead within 20 days.