WASHINGTON & BERKELEY BRIDGE CO. v. PENNSYLVANIA
STEEL CO.

(Circuit Court of Appeals, Fourth Circuit.    September 15, 1915.)

No. 1358.

1. NEGLIGENCE ⊂⇒44—INJURY TO SERVANT OF SUBCONTRACTOR—SAFE PLACE
TO WORK.

A bridge company, by its engineer, about a week before the accident, told a foreman of the plaintiff company, a subcontractor for the steel work, that it would be safe to go on a concrete pier built by another subcontractor within 48 hours after the frames were removed, without inspection of the pier or regard to the weather conditions. *Held* negligence, proximately causing injury to plaintiff's workmen when the steel work fell because the pier was insufficient to support it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 59; Dec. Dig. ⊂⇒44.]

2. INDEMNITY ⊂⇒15—QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE.

Evidence, in an action by a subcontractor for steel work for bridge constructed by defendant to recover over upon a judgment which it had paid in a suit by one of its workmen for personal injuries on the ground of defendant's negligence proximately causing such injury, *held* to make the plaintiff's contributory negligence a question for the jury.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 36-40, 42-47; Dec. Dig. ⊂⇒15.]

3. INDEMNITY ⊂⇒14—ACTION BY SUBCONTRACTOR—INJURY TO SERVANT—FEL-
LOW SERVANTS.

On the issue of negligence between a subcontractor and the contractor, resulting in injury to the subcontractor's servant and his recovery against the subcontractor, who sought to recover over against the contractor, the subcontractor could not escape the charge of negligence in the work intrusted to its foreman on the ground that he was a fellow servant of the injured servant.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 41; Dec. Dig. ⊂⇒14.]

4. EVIDENCE ⊂⇒542—OPINION EVIDENCE—SAFETY OF CONCRETE PIER.

In an action by a subcontractor, which had paid a judgment recovered by its injured servant, to recover over against the contractor, on the ground of its negligent assurance that a pier would safely support steel work, wherein no one could testify from his own observation that the hammering of the pier by the subcontractor caused its fall, testimony of witnesses familiar with concrete construction that the hammering would materially weaken the pier was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2355; Dec. Dig. ⊂⇒542.]

In Error to the District Court of the United States for the Northern District of West Virginia, at Martinsburg; Alston G. Dayton, Judge.

Action by the Pennsylvania Steel Company against the Washington & Berkeley Bridge Company. Judgment for plaintiff, and defendant brings error. Reversed.

See, also, 215 Fed. 32, 131 C. C. A. 340.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

Forrest W. Brown, of, Charlestown, W. Va., and Chas. D. Wagaman, of Hagerstown, Md. (Wagaman & Wagaman, of Hagerstown, Md., and Brown & Brown, of Charlestown, W. Va., on the brief), for plaintiff in error.

Chas. J. Faulkner, of Martinsburg, W. Va., and Henry H. Keedy, Jr., of Hagerstown, Md. (Stuart W. Walker, of Martinsburg, W. Va., on the brief), for defendant in error.

WOODS, Circuit Judge. On the first trial of this cause the District Court sustained plaintiff's demurrer to the evidence, and judgment was entered accordingly. This court reversed the judgment and remanded the cause for a new trial, on the ground that material evidence offered by the defendant had been excluded. On the second trial the District Judge directed a verdict in favor of the plaintiff for the amount claimed. For convenience we repeat the short statement made when the case was here before.

The Bridge Company, having undertaken to construct a bridge across the Potomac river near Williamsport, Md., contracted with the Steel Company to furnish and put in position the steel girder spans. Under a contract similar in terms Elmore & Hamilton Contracting Company undertook to furnish the material and construct the concrete piers or abutments. Mason D. Pratt, as engineer, agreed with the Bridge Company to supervise, inspect, and take charge of the construction of the bridge as its representative. On December 16, 1908, pier No. 10 fell while the workmen of the Steel Company were placing on it the steel superstructure, killing some of its men and injuring others. Frank L. Benning, one of the workmen who was seriously injured, sued the Steel Company in the circuit court for Washington county, Md., claiming damages for his injuries, on the allegation of negligence that the Steel Company knew or by the exercise of reasonable care could have known that the pier was "green, weak, defective, and of insufficient strength to carry the weight for which it was intended." The Steel Company gave the Bridge Company written notice of the pendency of the suit and of its intention to hold the Bridge Company responsible for any recovery in favor of Benning. Benning recovered judgment for $13,500 against the Steel Company.

After paying the judgment the Steel Company brought this action, alleging that it was the duty of the Bridge Company to see that the piers were safe for the placing of the steel superstructure; that the work was done under the direction of its engineer; that the defendant knew, or by the exercise of reasonable care and caution could have known, that the pier was green, defective, and of insufficient strength to carry the weight; and that nevertheless the defendant authorized and directed the employés of the Steel Company to proceed with the work of placing the steel superstructure on pier 10. On this allegation of negligence the plaintiff asked for judgment against the defendant for the amount of the judgment in favor of Benning, together with interest and costs.

By the former judgment of this court these points were settled:

First. The judgment of Benning against the Steel Company was conclusive against the Bridge Company as to matters necessary to Benning's recovery, namely: (a) The negligence of the Steel Company as a proximate cause of the injury in failing to furnish Benning a reasonably safe place to work; (b) the absence of contributory negligence on the part of Benning and of any act of a stranger as an intervening cause of the injury; (c) the correctness of the verdict is an estimate of the damages suffered by Benning.

Second. The judgment in favor of Benning was not conclusive as to matters not necessary to Benning's recovery.

Third. Since the Steel Company could not escape liability to Benning for failure to perform its nondelegable duty of furnishing him a reasonably safe place to work, by showing that it had relied on the Bridge Company to furnish a safe pier, it follows that the judgment in favor of Benning against the Steel Company did not settle the issue of negligence between the Steel Company and the Bridge Company.

Fourth. The Bridge Company was bound by its contract to use due care to furnish the Steel Company with a pier strong enough to bear the steel superstructure; and since the engineer was the agent of the Bridge Company, it was bound by his representations to the Steel Company as to the safety of the pier as fully as if they had been made by the company itself.

The questions open at the second trial between the Steel Company and the Bridge Company were: Did the Bridge Company, through its engineer, negligently represent to the Steel Company that the pier was safe so as to fix upon itself negligence as the proximate cause of the accident? Was the Steel Company guilty of contributory negligence either in disregarding the warning afforded by the appearance of the pier itself or the opinion of the assistant engineer that it would not be safe, or in using a battering ram to force the girder to its proper place on a cement pier not fully dry?

[1] As to the first question there can be no doubt under the evidence. Pratt, the engineer representing the defendant, about a week before the accident, in answer to the inquiry of Bickle, plaintiff's foreman in charge of the work, told him it would be safe to go on the pier 48 hours after the forms were taken off. The forms were taken off on December 11th, and no weight was put on until December 15th. The pier stood the weight of the girder on that day, but fell the following day, when the work was continued. As the result proved, such a general instruction by the engineer, without inspection of the piers, and without regard to weather conditions, was negligence.

[2] The defendant relies on the opinion, afterwards expressed to Bickle by Darby, assistant engineer, that the pier would not be safe when Bickle reached it, as a warning not to rely on the opinion previously expressed by Pratt that it would be safe to go on it. Darby testified that he was employed by Pratt to look after the construction of the pier and the fill, and that he told Bickle, several days after Pratt had left, that he thought the pier would not be sufficiently hard

for the superstructure when he reached it. He admitted, however, that he took no active steps to stop the work, because he had spoken to Pratt, who seemed to think the pier would be safe when the Steel Company was ready to place the superstructure, and he did not deny that he communicated Pratt's view to Bickle.

In view of this last statement, we are inclined to think the warning of Darby, standing alone, would not be evidence to charge Bickle with negligence in acting upon Pratt's opinion or direction. But it is to be considered further that Bickle knew that Pratt had not seen the pier after the forms were off, that the pier looked dark, indicating that it was not dry, and that Bickle was not confident of the pier and undertook to test it himself with an iron bar. More important than these circumstances was the testimony of a number of witnesses that the day before the accident the Steel Company used a battering ram to force the girder in place. The plaintiff contends that from the evidence as to the method of placing the girders it is clear that it was not only unnecessary, but impossible, to use a battering ram. But as to this position it is enough to say that there would be as little justification in directing a verdict for the plaintiff on the rejection of this evidence as to the use of a battering ram as it would be for the court to reject or leave out of consideration defendant's evidence to the effect that the method of construction made the use of a battering ram impossible.

While the point is not free from difficulty, taking the testimony on behalf of the defendant as true, we think it should have been left to the jury to decide whether Bickle was negligent in going on the pier relying on Pratt's statement or opinion, after he had received a later and contrary opinion from the assistant engineer, after he had observed that the pier was not dry, and after he had used a battering ram. On review of the whole testimony, we think there was such evidence of contributory negligence on the part of the plaintiff as to require that issue to be submitted to the jury. It was therefore error to direct a verdict for the plaintiff.

[3] It is insisted, however, that Bickle was a fellow servant of Benning, and that his neglect of duty to Benning cannot be imputed to the plaintiff company. Bickle was in sole charge of the work at the bridge, and to the extent that the plaintiff left to him the duty of seeing that Benning had a safe place to work he was not a fellow servant of Benning, but a representative of the master. Certainly, on the issue of negligence between the plaintiff and the defendant, the plaintiff cannot escape the charge of negligence in the work which the plaintiff had intrusted to Bickle on the ground that he was a fellow servant of Benning.

[4] The defendant offered the testimony of several expert witnesses to the effect that the ramming or battering of the pier would weaken the pier and make it more liable to fall. The questions were rejected; the court saying:

"This testimony is excluded, because the court is of opinion that the matter inquired of is not a matter for expert testimony, but is to be proven by the facts and conditions as they existed, of which the jury is to be the judge, and, further, because of the contention of counsel that it does not fully state the facts that existed in the case and state some that do not exist."

No witness could testify from his own observation that the hammering of the pier contributed to its fall. It seems, therefore, clearly competent to show by witnesses familiar with concrete construction that the hammering described would materially weaken the pier.

Reversed.