## Sigismund F. Waterman, Appellee, v. Fidelity & Casualty Company of New York, Appellant.

### Gen. No. 23,206.

1. INDEMNITY, § 24*—*when evidence as to malpractice is immaterial in action on indemnity policy.* Evidence that if there was any malpractice in plaintiff's treatment of a certain patient for a certain injury it would occur within two or three days after the first treatment, *held* to be immaterial in view of defendant's admission that it did not claim there was any malpractice in such treatment, in an action to recover under a policy of indemnity insurance of plaintiff against loss from liability for damages on account of bodily injuries or death suffered by any person or persons in consequence of any malpractice, error or mistake of plaintiff as a physician, or from any suit against plaintiff to enforce any such claim, whether it was groundless or not.

2. INDEMNITY, § 11*—*when insurer liable for amount paid to settle claim for malpractice.* Where plaintiff's treatment as a physician of a certain patient was commenced some time before and continued for several weeks after defendant issued to him a policy of indemnity insurance against loss from liability for damages on account of bodily injuries or death suffered by any person or persons in consequence of any malpractice, error or mistake of plaintiff and from any suit against him to enforce any such claim, whether groundless or not, defendant agreeing in such policy to defend any such suit, and as a consequence of defendant's refusal to defend a suit brought by such patient charging plaintiff with malpractice in such treatment both prior to and after the issuance

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of the policy, plaintiff defended and settled the claim sued on, *held* that defendant should be required to reimburse plaintiff for the amount paid by him on account of the suit, in an action on the policy.

3. INDEMNITY, § 11*—*when instruction on continued liability under indemnity policy is erroneous.* An instruction that where a physician has an undischarged case at the time of the issuance of a policy of indemnity insurance against loss from liability for damages due to his malpractice, error or mistake, and the patient continues under the physician's care after the policy is issued, this will constitute continued liability, *held* to be erroneous, as there would be no liability under the policy except for malpractice, error or mistake committed after the date it was issued, and it would make no difference how long the patient continued under the physician's care unless it was claimed the malpractice, error or mistake occurred after the policy issued.

4. APPEAL AND ERROR, § 1779*—*when judgment not reversed because of erroneous instructions.* Where a policy of indemnity insurance was issued to plaintiff agreeing to indemnify him against loss from liability for damages due to his malpractice, error or mistake as a practicing physician and to defend any suit brought against him on any such claim, whether it was groundless or not, and defendant refused to defend a certain suit brought against plaintiff on the ground that plaintiff's alleged malpractice involved in the suit was prior to the issuance of the policy, although it was alleged in the suit that the malpractice continued subsequently thereto, *held*, in an action on the policy, wherein defendant admitted plaintiff was guilty of no malpractice and that the amount paid by him in settlement of the suit was reasonable, that judgment should not be reversed because of erroneous instructions, as it appeared there was no defense.

Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1917. Affirmed. Opinion filed December 28, 1917. Rehearing denied January 10, 1918.

H. L. HOWARD, for appellant.

WILLIAM A. MONTGOMERY, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Sigismund F. Waterman brought an action of assumpsit against the Fidelity & Casualty Company of New York to recover $225. There was a judgment in plaintiff's favor for the amount of his claim, to reverse which defendant prosecutes this appeal.

Plaintiff seeks to recover damages against the defendant claiming the breach of a policy of indemnity issued by the defendant to him, whereby defendant agreed to indemnify plaintiff, who was a practicing physician, against suits for malpractice. The record discloses that on February 20, 1908, a Mrs. Warner, who had a fractured wrist, went to plaintiff to have the fracture reduced; that plaintiff treated Mrs. Warner, and on March 18, 1908, defendant issued to plaintiff its policy whereby it agreed to indemnify plaintiff against loss from liability imposed by law upon him for damages on account of bodily injuries or death suffered by any person or persons in consequence of any malpractice, error or mistake. A further agreement was that the defendant should defend in the name of plaintiff and in his behalf any suit brought against him to enforce a claim "whether groundless or not, for damages on account of bodily injuries or death suffered, or alleged to have been suffered, by any person or persons, in consequence of any malpractice, error or mistake." In February, 1910, Mrs. Warner brought suit against plaintiff for alleged malpractice. Thereupon plaintiff, in accordance with the condition of the policy, notified defendant to defend the suit. Defendant investigated the case and refused to defend, claiming that the subject-matter of Mrs. Warner's claim was not covered by the policy, for the reason that the malpractice, if any, occurred prior to issuance of the policy. Plaintiff then employed his own counsel and denied that he was guilty of any malpractice. Afterwards when the case was called for trial, plaintiff's counsel conferred with the other side and advised and recommended that

plaintiff pay Mrs. Warner $150, which was done, and her case was disposed of. He was also required to pay his counsel in that case $75, making $225, the amount of the verdict and judgment in the instant case.

Mrs. Warner testified on behalf of the defendant that she was first treated by plaintiff February 20, 1908, and that he continued to treat her for not more than three weeks thereafter. Her evidence, however, as to the length of time plaintiff treated her is not entirely clear. Plaintiff testified that he began his treatment of Mrs. Warner February 20, 1908, and that the last time he saw her professionally was June 12, 1908. In the instant case there is no claim that the plaintiff was guilty of any malpractice in his treatment of Mrs. Warner. In fact, defendant's counsel expressly stated that it did not claim there was any malpractice. A Dr. Wheeler testified as an expert on behalf of the defendant, and in answer to hypothetical questions describing a fracture such as Mrs. Warner was suffering from, stated that if there was any malpractice in the treatment of such an injury it would occur within two or three days after the first treatment. This testimony, in view of defendant's admission, was immaterial.

The defendant contends that the verdict is contrary to the manifest weight of the evidence. The only conflict in the evidence is the testimony given by Mrs. Warner and plaintiff above set forth. All of the other evidence is undisputed. And even if we should adopt Mrs. Warner's version of the matter, it would be entirely immaterial under the facts of this case, and would constitute no defense, for the reason that the defendant by the terms of the policy agreed to defend him against all claims on account of malpractice, whether they were groundless or not. In Mrs. Warner's suit, in both counts of her declaration, it was expressly alleged that plaintiff began to treat her professionally February 20, 1908, and continued such

treatment for five or six weeks thereafter, and during such time plaintiff treated her so unskilfully and negligently that the injury to her wrist was greatly aggravated and rendered incapable of being cured. The policy was issued March 18, 1908, and according to Mrs. Warner's allegations plaintiff continued to treat her for about three weeks after the policy was issued, during all of which time he was guilty of malpractice. It is clear, therefore, that it was the duty of the defendant under the express terms of the policy to defend plaintiff in the suit brought against him by Mrs. Warner, and, as it failed and refused to do so, it is liable to him in this case. It could not free itself from its obligation by so simple a device as investigating the facts in Mrs. Warner's case, which it says it did, and upon such investigation claim that it learned that the malpractice, if any, took place prior to the issuance of the policy, since it was expressly charged in that case that plaintiff had been guilty of malpractice after the issuance of the policy. Therefore it was defendant's duty to defend, and as there is no claim made now that plaintiff was guilty of any malpractice, if such defense had been made plaintiff would have escaped liability. As a consequence of defendant's refusal to defend, plaintiff was required to pay $225, and defendant under its policy should be required to reimburse him for this amount.

Defendant also complains of certain of the instructions given by the court, and the refusal to give other instructions requested. It is argued that while the amount involved in this suit is small, yet the principle is important. We have examined all of the instructions offered, given and refused. They are all wrong. The first instruction given told the jury that where a physician has an undischarged case at the time of the issuance of a policy of insurance, such as the one in the instant case, and the patient should continue under the physician's care after the policy was issued, this

would constitute a continued liability. There certainly would be no liability under the policy, except for malpractice committed after the date it was issued, and it would make no difference how long the patient continued under the doctor's care, unless it was claimed that malpractice had occurred after the policy was issued.

The second instruction was to the effect that even if plaintiff had paid $150 to Mrs. Warner in settlement of her claim, yet if the jury believe from the evidence that the acts of malpractice on which that suit was based took place prior to the date of the policy, then plaintiff could not recover, and the court added the qualification, unless the treatment of Mrs. Warner continued after the policy was issued. What has just been said will dispose of the qualification. The rest of the instruction was wrong, because it was the duty of the defendant to defend that suit, since it was there specifically claimed that plaintiff was guilty of malpractice after the issuance of the policy as well as before. What we have said disposes of the other instructions, and, although they are wrong, yet the judgment should not be reversed, as it was expressly stated by defendant that plaintiff was guilty of no malpractice, and further that the amount paid by him was reasonable. It therefore appears that there is no defense to plaintiff's claim for $225.

The judgment of the Circuit Court of Cook county is affirmed.

*Affirmed.*