GOOCH v. BUFORD et al.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1920.)

No. 3326.

1. APPEAL AND ERROR ⚙️1099 (11)—QUESTION DECIDED ON FORMER WRIT OF ERROR NO LONGER OPEN.

Where it was decided on a former writ of error that a verdict and judgment for defendant on the first count, in an action for personal injuries, did not dispose of the second count based on breach of contract, that question was no longer open.

2. JUDGMENT ⚙️194—RECOVERY ON COUNT FOR BREACH OF CONTRACT NOT BARRED BY VERDICT AND JUDGMENT ON COUNT FOR NEGLIGENCE.

Where plaintiff, suing a hospital for personal injuries, alleged negligence in one count and in another count breach of a contract to furnish her special and extraordinary care, nursing, and watching, because of her mental condition and suicidal tendencies, a verdict and judgment for defendant on the first count did not dispose of the second count, as the right to recover would not depend on the same facts.

3. HOSPITALS ⚙️8—QUESTION FOR JURY IN ACTION FOR INJURIES TO PATIENT.

In an action against a hospital for personal injuries alleged to have resulted from breach of a contract made with plaintiff's husband to furnish her a special nurse and special care, because of her mental condition and suicidal tendencies, evidence as to the making of the contract and its breach held to make a question for the jury.

4. HOSPITALS ⚙️8—WHETHER PLAINTIFF WOULD HAVE BEEN INJURED IF SPECIAL NURSE HAD REMAINED IN CHARGE WAS QUESTION FOR JURY.

In an action for personal injuries alleged to have resulted from a hospital's breach of contract to furnish a patient a special nurse and special care, whether the injury would have happened if the special nurse had remained in charge was a conclusion to be drawn from the other facts in the case, and was a question for the jury.

5. PRINCIPAL AND AGENT ⚙️157—PHYSICIAN COULD NOT ON BEHALF OF BOTH PARTIES REVOKE CONTRACT MADE FOR PATIENT WITH FIRM OF WHICH HE WAS A MEMBER.

Where one member of a partnership conducting a hospital was also the attending physician of a patient, in whose behalf her husband contracted for a special nurse and special care, such physician could not, as a representative of both parties, revoke the contract without the knowledge or consent of any one other than himself, so as to relieve proprietors of liability for injuries to patient from breach of contract.

6. CONTRACTS ⚙️187(1)—PLAINTIFF ENTITLED TO DAMAGES FOR BREACH OF CONTRACT MADE BY HER HUSBAND WITH HOSPITAL FOR HER BENEFIT.

Where plaintiff's husband contracted with a hospital to furnish plaintiff a special nurse and special care, plaintiff was the direct beneficiary of the contract and entitled to recover damages for any personal injuries sustained by reason of its breach.

⚙️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by Mary Dockery Gooch, by next friend, W. D. Gooch, against G. G. Buford and another, doing business as the Presbyterian Home Hospital. Judgment on a directed verdict for defendants, and plaintiff brings error. Reversed and remanded.

John E. Bell, of Memphis, Tenn., for plaintiff in error.
John W. Farley, of Memphis, Tenn., for defendants in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The amended declaration contained two counts—one to recover damages for personal injuries to plaintiff caused by the negligence of the defendants; the other to recover damages for the same injuries caused by defendants' breach of contract. The defendants' answer denied negligence on their part, averred contributory negligence on the part of the plaintiff, and for a third defense pleaded the statute of limitation. For answer to the second count, the defendants denied the making of a contract as in the declaration alleged.

Upon the trial of the issues so joined the court instructed the jury to return a verdict for the defendants on the first count of plaintiff's amended declaration, which was done accordingly. Upon the second count of the declaration the jury disagreed and were discharged. Final disposition of the second count was reserved for further orders of the court. Later, upon motion of the defendants, the court entered final judgment, dismissing plaintiff's petition with costs. This judgment was reversed by this court on the 6th day of March, 1917, for the reason that the issues upon the second count had not been adjudicated when the motion to dismiss was considered and sustained. Gooch v. Presbyterian Home Hospital, 239 Fed. 828, 152 C. C. A. 614. The cause was then remanded to the District Court, with directions to award the plaintiff a new trial upon the second count in the amended declaration in accordance with this judgment of reversal.

The cause then came on for trial in the District Court on the second count, and at the close of all the evidence the court peremptorily instructed the jury to return a verdict in favor of the defendants, and final judgment was entered upon this verdict. This proceeding in error is prosecuted to reverse that judgment.

[1, 2] The larger portion of the brief for defendants in error is devoted to a discussion of the effect of the verdict and judgment on the first count in the declaration. It is insisted that there is but one injury, and but one cause of action, and that a verdict and judgment upon either count disposes of the whole case. That is the same question that was presented to this court and decided adversely to defendants' contention in the first error proceedings, and therefore is no longer an open question in this case. However, it might be well in passing to say that, while each count in the declaration sought to recover damages for the same injuries, aside from the fact that one is based on tort, the other on breach of contract, the right to recover would not depend upon the same facts. Upon the first count it would

be necessary for the plaintiff to establish by a preponderance of the evidence that defendants had failed, neglected, or refused to give to this patient the usual, ordinary, and reasonable care and attention given by hospitals of this character to patients in like mental and physical condition.

Upon the second count the question of usual, ordinary, and reasonable care and attention would not be involved, but it would be necessary for the plaintiff to establish by a preponderance of the evidence that a contract was made with the defendants, as averred in the second count, by the terms of which this patient was to receive special and extraordinary care, nursing, and watching, which her husband, in view of his knowledge of her mental condition and suicidal tendencies, deemed to be necessary, and which extraordinary service the defendants agreed to furnish, and for which the husband agreed to pay, in addition to the hospital fee for usual and ordinary care and attention.

The fact that upon the trial of the first count in the declaration the plaintiff failed to establish by evidence that defendants were guilty of neglect in failing to provide this patient with ordinary and usual care and attention could not in any way affect or determine the issue as to whether they had given her such special care and attention as required by the terms of this contract, if such contract were in fact made.

The issues presented by the second count and the answer thereto, as distinguished from the first count, are: First. Was there a contract made, the terms of which were substantially as averred in the second count of the declaration? Second. Was there a breach of this contract on the part of the defendants? Third. Did this breach of contract result in injury to the plaintiff? If there was evidence offered by the plaintiff tending to establish these material averments, then the cause should have been submitted to the jury upon proper instructions by the court, and it was error to direct a verdict for the defendants.

[3] W. D. Gooch and Alfred Dockery testified on behalf of the plaintiff that her husband, Prof. Gooch, had made a contract with Dr. Buford, one of the partners and representing the partnership operating the Presbyterian Home Hospital, by the terms of which the defendants were to furnish plaintiff a special nurse, for which Prof. Gooch agreed to pay the sum of $15 per week in addition to the ordinary hospital fee of $20 per week for room, board, and ordinary care and attention, furnished to patients in like mental and physical condition; that at the time this contract was made he paid to Dr. Buford $50 on account; that by the terms of this contract this special nurse was to give her entire time and attention to the care of plaintiff; that, whenever this special nurse was required to leave the patient, one of the floor nurses would be called to take her place; that no extra charge would be made for the service of the floor nurse while relieving the special nurse, this service being included in the room rental.

They also testified that Prof. Gooch told Dr. Buford at that time that he had authorized Alfred Dockery, brother of the plaintiff, to act as his agent; that Mr. Dockery lived in the city, and that whenever Dr. Buford wanted to confer with him in reference to her case he could be reached by telephone. Mr. Dockery also testified that three days

prior to the injury he had called to see his sister, Mrs. Gooch; that when leaving the hospital Dr. Buford called him into his office and told him that the plaintiff was worrying over the expense of the special nurse, and wanted to know if he did not think it best to discharge her; that Mr. Dockery then said to Dr. Buford that he thought the nurse was very necessary to be with the plaintiff at all times, and he would not agree to her discharge; that, if the nurse was to be dismissed, Dr. Buford would have to take the matter up with Prof. Gooch; that he (Mr. Dockery) would not agree to her discharge.

Mrs. Earl Smith, formerly Miss Jennie Roberts, testified that she was assigned by the hospital as special nurse for the plaintiff; that in obedience to the orders given her Mrs. Gooch was never allowed to be out of her sight during the time she was so employed, except when she was relieved by another nurse. She further testified that she was dismissed from this case by Dr. Buford between 8 and 9 o'clock on the morning of the day the plaintiff was injured; that the plaintiff was injured shortly after the lunch hour; that after she was dismissed from this case she went on general duty as a floor nurse; that on the day plaintiff was injured she carried the lunch tray into her room, then went for her own lunch, but that she did not ask any one to watch her that day, because she was not her patient any longer, but "just walked into her room and set the lunch down and walked out, the same as she would in any other patient's room."

Dr. Buford does not deny that as representative of the partnership operating this hospital he entered into a contract with Prof. Gooch, by the terms of which the hospital was to furnish a special nurse to the plaintiff; but he does deny that anything was said about having a nurse constantly in attendance. He further testified that it is the duty of a special nurse to stay with the patient in her charge; "that no other nurse is permitted to go there unless it is for a special accommodation or something, and this special nurse gives her entire time and attention to this patient." He admits that he discharged this special nurse on the same day the injury occurred to the plaintiff. It further appears, from the evidence of Prof. Gooch, Mr. Dockery, and Dr. Buford, that at the time this contract for a special nurse was made Dr. Buford was employed as physician to treat the plaintiff professionally; that there was a discussion between Prof. Gooch and Dr. Buford as to whether more than one special nurse would be required to care for the plaintiff in her mental condition; that Dr. Buford had advised that one special nurse would be sufficient; that Prof. Gooch insisted upon seeing the special nurse to be assigned to the case before deciding whether more than one would be necessary. In this connection Dr. Buford was asked by his counsel:

"Was that your professional opinion as the physician in charge, after you had seen and examined and conversed with this lady—as the physician—not as manager of the hospital at all, but as the physician in charge of the patient, acting as the physician, and contrary to your interests as part owner of the hospital, that she should have only one special nurse?"

Answer: "Only one special nurse; yes. There was no necessity for more."

262 F.—57

It is clear, however, from the testimony of these three witnesses, that up to this time Dr. Buford had not seen, examined, or conversed with Mrs. Gooch, as assumed by counsel when this question was asked, and therefore he could not have been exercising his professional knowledge as to her need. Nor does he make any such claim in his testimony relative to the making of this contract. On the contrary, he testified that Prof. Gooch had asked in the beginning of the conversation to let the expenses be as small as possible, and that "he was looking to Prof. Gooch's interest, as separate from the hospital, as much as he would any other man's interest." It would therefore appear that in giving this advice to Prof. Gooch he was not acting in any professional capacity, but was acting for the hospital, and endeavoring upon its part to treat Prof. Gooch fairly, the same as he would treat any other man, regardless of professional employment.

Dr. Buford denied that he had any conversation with Mr. Dockery with reference to the discharge of this nurse. There is also a conflict in the evidence as to the terms of the contract, touching the extent and character of the services to be rendered by a special nurse, and also as to the exact time when she ended her connection with this case. This conflict in the evidence cannot affect the constitutional right of plaintiff to have these issues submitted to a jury for its determination.

It is also contended, even if the special nurse did end her connection with this case in the forenoon of that day, that nevertheless the plaintiff was receiving the same care and attention at the time the injury occurred that she would have received, had the special nurse continued in charge, and that, in any event, the same result would have followed.

[4] There is not, and in the very nature of the case there could not be, any evidence offered as to what would or would not have happened, had the special nurse remained in charge. That is a conclusion that must be drawn from the other facts proven in the case, and it is also a question for the jury to determine.

[5] It is further contended that Dr. Buford, as physician to Mrs. Gooch, was authorized to rescind this contract for a special nurse that he, as one of the partners and managing agent of the partnership, had made with her husband for her safety. In answer to this it is sufficient to say that Dr. Buford could not occupy a dual relation to this contract, nor could he represent both parties thereto, either in the making or revocation of the same. Prof. Gooch knew the mental condition of his wife and her suicidal tendency far better than any other person present at the time the contract was made. Having made this contract, he had the right to rely upon the faithful performance of its terms by the other contracting party.

Whether Dr. Buford, as the physician of Mrs. Gooch, might have rescinded or revoked this contract without the knowledge or consent of Prof. Gooch, were he in no wise connected with the hospital and acting solely and on behalf of his patient, is a question that does not arise in this case; neither is it a question of the good faith of Dr. Buford, but rather a question of his legal right and authority to act as the representative of both contracting parties. His employment as her physician could not and did not change his legal relation to the principal he represented in making this contract, to wit, the partner-

ship, of which he was not only a member, but also in active charge and management of its affairs. Nor did it authorize him, as her physician, to agree with himself, as managing agent of that partnership, that the contract entered into between Prof. Gooch and the hospital should be revoked or canceled without the knowledge or consent of either party thereto, except in so far as he assumed the authority to represent both.

[6] These propositions are too elementary to require further discussion. Dr. Buford not only purported to represent the hospital, but actually did represent it in making this contract. He cannot now be heard to say that in revoking and rescinding the same contract he not only represented the hospital, but also represented Prof. Gooch, or his patient, Mrs. Gooch, who was and is the direct beneficiary of this contract, and entitled to recover any damages she may have sustained by reason of its breach.

The judgment of the District Court is reversed, and the cause remanded for new trial and further proceedings according to law.