GEORGE LEAVENWORTH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46611. Promulgated November 7, 1932.

*George Leavenworth*, pro se.
*Maxwell M. Mahaney, Esq.*, for the respondent.

22

OPINION.

LANSDON: The petitioner relies on the cited decisions of the Supreme Court of Tennessee and contends that the effect of the decree was such as to establish a loss to him in 1924 of his timber rights measured at their fair market value on March 1, 1913. We

are unable to agree with the petitioner's construction of that decision. The single issue involved there was the petitioner's right to cut standing timber on land belonging to Hunter, in virtue of a written instrument which fixed a time limit for such cutting and specifically provided that after said date the title to all uncut timber should revest in said Hunter. It was a denial of the petitioner's claim of title to any uncut timber on Hunter's land, but in no sense a denial of his right for a money judgment against Hunter for taking timber from the Hughes' lands which he owned, or upon which he held an option, if he had such a right.

There is no proof as to how much cottonwood timber Hunter cut from the lands covered by petitioner's contract, or that such cutting actually created a deficiency in quantity to the extent that petitioner could not have recovered the whole 6,000,000 feet claimed, but this case has been submitted to us by both parties to this controversy upon the theory that the trespass created such a deficiency and that the petitioner had a cause of action against Hunter for the value of the timber taken. Assuming that a cause of action arose in favor of petitioner against Hunter, as indicated, we think it equally clear that petitioner had a cause of action against Mrs. M. E. Hughes, who became his indemnitor through her contract with Hunter, in which she received $2,700 in cash and an assignment of timber rights in consideration of her agreement to make good any loss he might sustain through Hunter's trespass. *Ruohs* v. *Traders Fire Ins. Co.*, 111 Tenn. 405; 78 S. W. 85; *Princess Amusement Co.* v. *Wells*, 271 Fed. 226; *National Transit Co.* v. *Davis*, 6 Fed. (2d) 729; *Gooch* v. *Buford*, 262 Fed. 894; *Silver King Coalition Mines Co.* v. *Silver King*, 204 Fed. 166; *Barker* v. *Pullman Palace Car Co.*, 124 Fed. 555; *Union Pacific Ry. Co.* v. *Durant*, 95 U. S. 576; *Hendrick* v. *Lindsay*, 93 U. S. 143.

The right of action against Hunter accrued in 1914, when the acts of trespass were committed. *Emil Stern*, 5 B. T. A. 89; *Parker Wire Goods Co.*, 8 B. T. A. 448. Under the laws of Tennessee the petitioner could sue in tort for damages for such trespass, or upon an implied promise to pay the value of the timber taken. *Whittaker* v. *Poston*, 120 Tenn. 207; 110 S. W. 1019. At the latest the statute of limitations would have barred suit in six years, or at some time in 1920, so that whatever loss the petitioner suffered through his failure or inability to procure reimbursement from Hunter, if the loss is to be determined by that test, must have been sustained in that year and not in 1924, when Hunter's suit against him terminated.

Respecting petitioner's contract with his grantors, that terminated in 1922, and on June 1 of that year it was definitely known, or at best the petitioner then claimed, that the deficiency in timber which

resulted in the loss existed. Obviously the loss, if any, was then a recognized fact; and the only question thereafter was one connected with recoupment, or payment for said loss. *Bankers Pocahontas Coal Co.*, 18 B. T. A. 901. Hughes attempted to make such payment, in kind, by conveyance of timber to petitioner under the Hunter settlement. The court held that the petitioner received nothing through that attempt, which left the parties exactly in their original position respecting the alleged deficiency. In addition to the timber rights which Hunter conveyed to Hughes for petitioner's benefit, he also paid $2,700 in cash for a guarantee that Hughes would save him harmless from any claims made by petitioner. Other than the fruitless settlement, just noted, there is nothing in the record to show what attempt, if any, the petitioner ever made to hold Hughes to that indemnity agreement, or to secure an accounting of the cash paid by Hunter for his benefit. As hereinbefore pointed out, petitioner's loss in timber, if any, occurred at the time Hunter cut and removed the timber in 1914, and his rights, if any, for an accounting with his grantors matured when it was definitely known that a deficiency in timber existed or would exist at the expiration of his contract on June 1, 1922. If the contract of settlement had the effect of postponing that loss, as claimed by him, then it would seem that no loss could be attributed to him until he had exhausted his legal remedies against his grantors, who had agreed to make good the deficiency in their contract with Hunter. The record would indicate that petitioner's grantors were at all times solvent and good for any judgment he might have procured against them, or to otherwise discharge any orders that a court might make in an action brought on the contract. The statute of limitations had not run on such an action in 1924 and it can not be said that his rights against them were concluded in that year. We think, however, for reasons hereinabove stated, that whatever loss the petitioner sustained in the transactions here considered was sustained prior to the taxable year and that the issue respecting the year of its deduction must be decided in favor of the respondent.

At the hearing the respondent confessed error in disallowing depletion of timber rights claimed in the taxable year and, accordingly, that issue is decided in favor of the petitioner.

*Decision will be entered under Rule 50.*