ÆTNA LIFE INS. CO. OF HARTFORD,
CONN., v. MAXWELL.

No. 4133.

Circuit Court of Appeals, Fourth Circuit.

April 17, 1937.

J. Campbell Palmer, III, of Wheeling, W. Va. (Hale J. Posten, of Morgantown, W. Va., Erskine, Palmer & Curl, of Wheeling, W. Va., and Posten, Glasscock & Posten, of Morgantown, W. Va., on the brief), for appellant.

Charles T. Herd, of Morgantown, W. Va. (Kermit R. Mason, of Morgantown, W. Va., and Frank A. O'Brien, of Wheeling, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This action at law was brought by the infant plaintiff, William Maxwell, by his father and next of kin, against the Ætna Life Insurance Company to recover damages for the loss of a leg occasioned by the negligent treatment of Dr. W. H. Howell, physician and surgeon, who was called in after the leg had been broken in an automobile accident. The doctor was covered by a group policy of insurance issued by the defendant to the Monongalia County Medical Society of which he was a member. The policy provided that the insurance company upon notice would defend and indemnify each assured in the sum of $25,000 against loss and expense arising against claims for damages on account of any malpractice or mistake alleged to have been committed during the policy period; and that the insolvency or bankruptcy of the assured would not relieve the company from any payment for which it would otherwise be liable under the policy; and if, because of such insolvency or bankruptcy, an execution on a judgment recovered in a suit against the assured should be returned unsatisfied, the judgment creditor should have the right to recover the amount of the judgment against the company to the same extent that the assured would have had to recover against the company had he paid the judgment, but not in excess of the limits expressed in the policy.

The sixteen year old plaintiff was struck by an automobile on the night of March 25, 1932, and suffered a simple comminuted, slightly oblique fracture of the middle third of the right femur, with an overlapping of the bones of two and one-half inches. Dr. Howell had charge of the case from March 26 to August 7, 1932, when he was discharged. The policy of insurance, however, was not issued until July 23, 1932, and this date is important, because the defense is that the malpractice or neglect, which the physician was subsequently found to have committed, took place during the prior period and hence was not covered by the policy.

This finding was made in an action of law brought by the infant plaintiff against

the physician in the circuit court of Monongalia county, W. Va., wherein it was charged that the physician was guilty of such malpractice and neglect throughout the period of his employment that it became necessary to amputate the plaintiff's leg. Due notice of this suit was given to the insurance company, and the company, having entered into a nonwaiver agreement to preserve its right to deny liability under the policy, participated in the defense of the case, at least as to the period covered by the policy. The jury found a verdict for the plaintiff in the sum of $6,-000, and the judgment based thereon was affirmed on appeal by the Supreme Court of Appeals of West Virginia in Maxwell v. Howell, 114 W.Va. 771, 174 S.E. 553. Execution on the judgment was returned unsatisfied because the defendant had gone into bankruptcy, and subsequently the pending action was instituted in the state court and removed to the District Court below on the ground of diversity of citizenship. In this action a verdict was rendered for the plaintiff against the insurance company for the sum of $4,022.67, which the jury found to be the damages suffered by the plaintiff through the malpractice and neglect which occurred during the policy period, and also for the sum of $121.90, the amount of the court costs in the action in the state court.

The plaintiff's evidence in the pending case consisted of the transcript of evidence taken at the previous trial against the physician and disclosed in substance the following medical history of the case: An X-ray of the injured leg was taken on March 26, the day after the accident, and preparations for the reduction of the fracture were made. On March 31 the physician made a ten-inch incision of the thigh and reduced the fracture by placing the ends of the bones in juxtaposition and inserting in each of them a beef bone peg. The wound was then sewed up. A bandage was applied and a four-foot board, running from the hip to the ankle, was used as a splint. Sandbags were placed alongside the leg to keep it immobile. Four days later there was an abnormal rise of temperature, indicating infection. Nine days after the operation, the stiches were removed and unmistakable signs of infection were disclosed at the place of the incision. Nothing was done to relieve this infection until April 13, when the splint was removed. On April 15 the wound was opened and drained of pus, and drainage continued until April 30, after which irrigation was resorted to and maintained. About May 1 it was apparent that the bones were not in place. On May 10 the first X-ray after the operation was taken. Thereafter and until June 24, when the second X-ray was taken, the wound was occasionally drained, irrigated, and dressed. The last X-ray showed an angulation of the fragments of the bone and a five-inch overlap of the bones with some absorption and decay. During this period the temperature remained extremely high except on a few occasions when it was subnormal. Draining, irrigation, and dressing continued until July 18 when, a pocket of pus having been formed, the wound was again opened and drained. With regard to the period from May 10 to July 18, the evidence was conflicting as to whether the doctor had visited his patient with sufficient frequency. From July 18 to August 7 the physician visited the patient every day except for the period from July 25 to 28, during which another physician was substituted. After July 23, there was a continuous drop of temperature until August 7, when it became practically normal. On August 7 the doctor was discharged and another surgeon took the case who four days later, after consultation with several other local physicians, amputated the leg just below the hip.

The plaintiff charged in his suit against Dr. Howell that the course of treatment above described involved maltreatment or neglect in a number of particulars, most of which it will be observed occurred before the policy of insurance went into effect. Amongst other things it was alleged in the bill of particulars that the physician did not proceed to reduce the fracture as speedily as possible; that he failed to try to reduce the fracture by nonoperative methods; that he did not properly prepare the leg for the operation; that he should not have used a bone peg in the open reduction of the fracture; that he failed to apply a proper splint after the operation; that he failed to take a postoperative X-ray to see if the bone was properly set; that as a result of these mistakes and of neglect after the operation for 10 days the wound became infected; that the treatment of the infection was negligent; that the physician was negligent also in his treatment for 16 weeks after the operation, that is, from March 31 to July 22, one day before the

policy went into effect; that during the period from March 31 to August 1 the physician failed to visit the plaintiff for long periods of time, as long as 8 days, and failed to do anything to treat the infection properly and, although the X-ray pictures taken 6 weeks after the operation showed the fragments of bone to be in a position in which they could not heal, he failed to treat the patient properly or to use any method to reduce the fracture; and that, as a result of the neglect, amputation of the leg became necessary. All of these particulars related to the period anterior to the policy except those that charge a failure to give proper treatment or attention in the period ending August 1, of which period only the last 10 days were covered by the policy.

The plaintiff introduced the evidence of a number of physicians to support the charges of negligence, particularly that it was improper to perform an open reduction operation until all closed methods had been exhausted; that the splint used was not a proper one; that a postoperative X-ray should have been promptly taken; and that, when infection developed, there should have been an immediate incision and forcible drainage, as well as daily visits by the physician. On the part of the defendant, evidence was submitted to show that he had followed approved methods and practice, and had not been negligent, and that at the time of his discharge from the case it was his intention first to clear up the infection, then discharge the patient from the hospital and build up his physical condition, and then stretch the muscles and restore the femur by a bone graft operation.

Such was the character of the evidence in the case against the doctor in the state court, and, since he was responsible for the consequences of his neglect whenever it occurred, no attempt was made to distinguish between the period before and the period after the policy became effective. But, when all of the testimony in this trial was introduced in the pending case against the insurance company, the distinction became important, and therefore the insurance company offered in its defense the testimony of several physicians to show that, if any malpractice occurred, it took place during the first 6 weeks after the injury, and that from July 23 to August 7 the treatment was proper and did not contribute to the damage suffered by the plaintiff, and that the treatment during these 16 days should have been continued to a point where the fracture could have been reduced and the amputation avoided.

This offer of testimony was rejected by the District Judge on the theory that the insurance company had had its chance in the first case and was bound by the judgment against the assured and should not be allowed to retry the issues in the pending suit. The District Judge therefore confined the testimony to that taken in the prior suit, and left it to the jury to determine what part of the total damages of $6,000 covered therein was suffered during the policy period. In our opinion, it was error to reject the proffered testimony. The insurance company, having been notified of the suit against the physician and having participated in the defense of the suit, at least to a limited extent, was indeed bound by the judgment upon the issues at stake therein and estopped to contest the validity thereof. When a person is responsible over to another, either by way of operation of law or by express contract of insurance, and is duly notified of the pendency of a suit and requested to assume the defense, he is no longer regarded as a stranger because he has the right to appear and defend the action, and the judgment, if obtained without fraud or collusion, will be conclusive against him whether he has appeared or not. Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 330, 16 S.Ct. 564, 40 L.Ed. 712.

But this rule is not without qualification, if the insurer undertakes the defense of the action against the insured under an agreement of nonwaiver. A judgment rendered under such circumstances is not conclusive in a subsequent suit between the parties to the contract of insurance unless the liability over is as broad as the original liability; and, if the insured wishes to rely upon the judgment, he must show that the very ground of liability upon which his suit is based was found to exist and was necessarily adjudicated in the prior action. The plaintiff in the pending case stands in the shoes of the insured by virtue of the express terms of the policy, and it follows that the judgment in the prior case is not conclusive here as to issues which were not there determined. Washington & Berkeley Bridge Co. v. Pennsylvania Steel Co. (C.C.A.) 215 F. 32; Id.

(C.C.A.) 226 F. 169; Id. (C.C.A.) 252 F. 487; B. Roth Tool Co. v. New Amsterdam Casualty Co. (C.C.A.) 161 F. 709; Lake Drummond C. & W. Co. v. West End T. & S. D. Co. (C.C.A.) 142 F. 41; Burley v. Compagnie De Navigation Francaise (C.C.A.) 194 F. 335; City of St. Joseph v. Union Ry. Co., 116 Mo. 636, 22 S.W. 794, 38 Am.St.Rep. 626; Littleton v. Richardson, 34 N.H. 179, 66 Am.Dec. 759; City of Lincoln v. First Natl. Bank, 67 Neb. 401, 93 N.W. 698, 60 L.R.A. 923, 108 Am.St.Rep. 690; City of Boston v. Worthington, 10 Gray (Mass.) 496, 71 Am.Dec. 678; Ford Hospital v. Fidelity & Casualty Co. of New York, 106 Neb. 311, 183 N.W. 656; Malley v. American Indemnity Corp., 297 Pa. 216, 146 A. 571, 81 A.L.R. 1322, note; compare Waterman v. Fidelity & Casualty Co. of N. Y., 209 Ill.App. 284.

The issue decided in the case of the injured boy against the physician was not the same as that proposed against the insurance company in the pending action. There it was only necessary for the plaintiff to prove that the defendant had been negligent at any time during his treatment of the injury, and it is manifest that much, if not all, of the neglect which was proved took place before the policy was issued. Here, on the other hand, the defendant insurance company is liable only for such maltreatment or neglect as took place between July 23, the date of the policy, and August 7, when the physician was discharged from the case. The insurance company has no greater liability for the negligence which took place before July 23 than it would have had if another physician, not covered by the policy, had been employed, or if Howell had been employed for the first time on July 23 to treat the injury, or if the prior period had been covered by the policy of another company. Since it was necessary for the jury to distinguish between the effects of the medical and surgical treatment before and after July 23, the evidence of medical men was particularly relevant; and, if the jury had had the assistance of their expert advice, they could have more readily decided whether the substantial damage to the plaintiff was done during the preliminary period of 119 days, when the kind of treatment was determined upon and the greater part of it was administered, or during the final 16 days after the issuance of the policy and before the physician was dismissed. It was essential of course that the hypothetical question put to the expert witnesses should fully cover the facts shown by the transcript of evidence in the first suit; but no objection to the question on this score was made, and it was an error prejudicial to the defendant to reject the testimony which it offered.

The case must therefore be remanded for a new trial, and it becomes necessary for this court to pass upon the point made in the court below that the remedy of the plaintiff lay in equity and the case should therefore be transferred to the equity docket. No contention was made, and we think that none can be successfully made, that the injured party in a case of this kind has no substantive right of action against the insurance company. It is true that it has been said in some federal decisions that in general a creditor, not being privy thereto, cannot sue upon a contract between his debtor and a third party in which the latter promises to pay the debt, because the promise is made primarily for the benefit of the debtor and he has a right of action against the promisor; and, if the creditor (who is protected by his right of action against the promisee) could also sue the promisor, the latter would be liable to two separate actions for the same debt. Second National Bank v. Grand Lodge, 98 U.S. 123, 25 L.Ed. 75;[1] Constable v. National S. S. Co., 154 U.S. 51, 72, 73, 14 S.Ct. 1062, 38 L.Ed. 903; In re Gubelman (C.C.A.) 13 F.(2d) 730, 48 A.L.R. 1037; Tamiami Investment Co. v. Berk (C.C.A.) 57 F.(2d) 1034.

In a series of cases in the Supreme Court, the right of a mortgagee to bring a suit in equity against the grantee of the mortgagor, who has assumed the payment of the mortgage, has been recognized. But the holding is based, not on the rights of the mortgagee under the contract, but on the equitable doctrine that a creditor is en-

---

[1] This case has been interpreted in some quarters to mean that while an action at law by a third party will not lie, a suit in equity may be brought. See Corbin, Contracts for Benefit of Third Persons in Federal Courts, 39 Yale Law Journal, 601; Williston on Contracts, § 381; Willard v. Wood, 135 U.S. 309, 10 S.Ct. 831, 34 L.Ed. 210. On the other hand, it is said in Johns v. Wilson, 180 U.S. 440, 446, 21 S.Ct. 445, 45 L.Ed. 613, that recovery was denied in the case because privity between the parties was lacking.

titled to have the benefit of any obligation given as security to the principal debtor. In these circumstances, the grantee of the property is recognized as the principal debtor, and the mortgagor as the surety; and it is held that, although the grantee is not liable directly to the mortgagee either at law or in equity, he may sue in equity in the right of the mortgagor by virtue of a creditor's right to avail himself by suit in equity of any security which the debtor has received from a third person. Keller v. Ashford, 133 U.S. 610, 10 S.Ct. 494, 33 L.Ed. 667; Willard v. Wood, 135 U.S. 309, 10 S.Ct. 831, 34 L.Ed. 210; Union Mutual Life Ins. Co. v. Hanford, 143 U.S. 187, 190, 12 S.Ct. 437, 36 L.Ed. 118; Johns v. Wilson, 180 U.S. 440, 21 S.Ct. 445, 45 L. Ed. 613.

The early English cases likewise indicate that under the early common law a third party beneficiary had no right to maintain an action upon the contract, for he is a stranger thereto and there is no consideration for any assumpsit to him. Vines, Abridgement 1, 333–337; Williston on Contracts, § 360; Corbin, Contracts for Benefit of Third Persons, 46 L.Q.R. 12.

But these statements may not be accepted as truly representing the state of law in this country today, as will appear from the Restatement of the Law of Contracts, §§ 133 to 147. Where the performance of a promise in a contract will benefit a person other than the promisee, that person is classified as a donee beneficiary when the promise is in the nature of a gift or confers upon the beneficiary a right against the promisor to some performance which the promisee is under no obligation to render; or as a creditor beneficiary when the promise is to discharge a duty owed by the promisee to the beneficiary, section 133; and in both cases the promise creates a duty which the promisor must perform, and this duty, if not performed, may be made the basis of an action by the beneficiary against the promisor. Sections 135, 136, 141. In a third class is the incidental beneficiary, who is one that does not answer to the description of either of the two classes mentioned above, and he acquires no right against the promisor or the promisee. Sections 133, 147. See, also, German Alliance Ins. Co. v. Homewater Co., 226 U.S. 220, 33 S.Ct. 32, 57 L.Ed. 195, 42 L.R.A.(N.S.), 1000; Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290. Speaking of the first two classes, Williston on Contracts, § 357, points out that the pressing necessity of the situation and the inherent reasonableness of the solution has led the great majority of the American courts frankly to recognize "that the common law has given birth to a new principle of law which takes its place in the family of legal principles and gives not only to a donee beneficiary but also to a creditor beneficiary the right to enforce directly the promise from which he derives his interest." See, also, 81 A.L.R. 1271.

Accordingly, we find that the federal courts very generally have recognized the right of the beneficiary to sue and have applied the law of the state under which the rights and liabilities of the parties to the contract were to be determined. Ramsey & Gatlin Const. Co. v. Vincennes Bridge Co., 283 U.S. 796, 51 S.Ct. 484, 75 L.Ed. 1420; Willard v. Wood, 135 U.S. 309, 10 S.Ct. 831, 34 L.Ed. 210, Union Mutual Life Ins. Co. v. Hanford, 143 U.S. 187, 12 S.Ct. 437, 36 L.Ed. 118.[2]

---

[2] In the following cases the existence vel non of a substantive right on the part of the beneficiary to bring suit on the contract was decided in accordance with the law of the state: Minneapolis Steel & Machinery Co. v. Federal Surety Co. (C.C.A.) 34 F.(2d) 270; Lawrence Natl. Bank v. Rice (C.C.A.) 82 F.(2d) 28; Duvall-Percival Trust Co. v. Jenkins (C.C.A.) 16 F.(2d) 223; Pennsylvania Cement Co. v. Bradley Const. Co. (C.C.A.) 7 F.(2d) 822; Maryland Casualty Co. v. Fowler (C.C.A.) 31 F.(2d) 881, 63 A.L.R. 1375; Hartford Accident & Indemnity Co. v. Board of Education (C.C.A.) 15 F.(2d) 317; Maryland Casualty Co. v. Board of Water Com'rs (C. C.A.) 66 F.(2d) 730; M. E. Smith & Co. v. Wilson (C.C.A.) 9 F.(2d) 51; Maryland Casualty Co. v. Portland Const. Co. (C.C.A.) 71 F.(2d) 658; Federal Surety Co. v. Minneapolis Steel & Machinery Co. (C.C.A.) 17 F.(2d) 242, 244; Brown v. Ford Motor Co. (C.C.A.) 48 F. (2d) 732; United States Fidelity & Guaranty Co. v. Vermont Marble Co. (C. C.A.) 16 F.(2d) 83; Gravelle Const. Co. v. Board of Com'rs of M. Dist. No. 1, etc. (C.C.A.) 82 F.(2d) 391; National Surety Co. of New York v. Ulmen (C.C. A.) 68 F.(2d) 330; Consolidated Cut Stone Co. v. Hartford Accident & I. Co; (C.C.A.) 62 F.(2d) 975.

See, also, the following cases in which relief was granted upon the ground that the prevailing rule in the country allows

It is agreed that the contract in the pending case is governed by the law of West Virginia. Section 5494 of the West Virginia Code of 1932 provides as follows:

"If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise."

The term "sole beneficiary," descriptive of such a person as is referred to in this statute, was originally created to designate a donee beneficiary. Williston on Contracts, § 357; Haines v. Pacific Bancorporation, 146 Or. 407, 30 P.(2d) 763. Such a beneficiary is entitled to sue a promisor at law in West Virginia under the quoted statute as interpreted by the decisions of the West Virginia courts. Johnson v. McClung, 26 W.Va. 659, 670; Butts v. Butts, 81 W.Va. 55, 94 S.E. 360; King v. Scott, 76 W.Va. 58, 59, 84 S.E. 954; Hamilton v. Wheeling Public Service Co., 88 W.Va. 573, 107 S.E. 401, 21 A.L.R. 433; Petty v. Warren, 90 W.Va. 397, 110 S.E. 826; O'Neal v. Pocahontas Trans. Co., 99 W.Va. 456, 129 S.E. 478; State ex rel. West Virginia Sand, etc., Co. v. Royal Indemnity Co., 99 W.Va. 277, 128 S.E. 439; Criss v. U. S. F. & G. Co., 105 W.Va. 380, 142 S.E. 849; Meade v. United States Casualty Co., 111 W.Va. 504, 163 S.E. 8; Johnson v. Inter-Ocean Casualty Co., 112 W.Va. 396, 164 S.E. 411; Standard Oil Co. of New Jersey v. Smith, 116 W.Va. 16, 178 S.E. 281; Williston on Contracts, §§ 365, 368.

Obviously this statute is not applicable to the pending case for the promise of the insurance company to defend and indemnify the insured against loss and expense resulting from claims for damage on account of malpractice and mistake, and to pay the amount of any judgment against the insured on this account whether satisfied or not, was not made solely for the benefit of the judgment creditor but primarily for the benefit of the insured.

The plaintiff therefore answers to the description of a creditor beneficiary. Such a beneficiary has no rights under the statute but has been adjudged by the courts of the state to have a substantive right under the common law of the state to recover against the promisor in a suit in equity. Williston, § 358, Note 3; Petty v. Warren, supra; King v. Scott, supra; Johnson v. McClung, supra; Criss v. U. S. F. & G. Co., supra; Meade v. United States Casualty Co., supra.

In the absence of controlling state statute, the right of the plaintiff to sue the promisor in a case of this kind presents a question of general law as to which the federal courts follow their independent judgment, Washburn & Moen Mfg. Co. v. Reliance Marine Ins. Co., 179 U.S. 1, 21 S.Ct. 1, 45 L.Ed. 49; Fountain & Herrington v. Mutual Life Ins. Co. (C. C.A.) 55 F.(2d) 120, 124; Black & White Taxicab & Transfer Co. v. B. & Y. Taxicab & Transfer Co., 276 U.S. 518, 48 S. Ct. 404, 72 L.Ed. 681, 57 A.L.R. 426; Citizens Natl. Bank of Orange v. Waugh (C. C.A.) 78 F.(2d) 325, 328, 100 A.L.R. 939; but, in view of the numerous decisions in which the right has been recognized irrespective of statute in both federal and state courts, it must now be considered as firmly established as a principle of general commercial law. Especially is this true in view of the express provision of the policy that, if a judgment against the insured is returned unsatisfied on account of his insolvency or bankruptcy, the judgment creditor shall have a right of action to recover the amount of the judgment from the company. The parties have given the judgment creditor a direct interest in the contract which he is entitled to enforce.

The only question is as to the form of the remedy. We have seen that in the courts of West Virginia such a suit must be in equity, for the plaintiff is not the sole beneficiary since an insured, although a bankrupt, has an interest in the payment of his indebtedness. Restatement, § 133, Illus. 6, p. 155. It has been broadly

recovery under the circumstances; Hendrick v. Lindsay, 93 U.S. 143, 23 L. Ed. 855; Keller v. Ashford, 133 U.S. 610, 10 S.Ct. 494, 33 L.Ed. 667; Ohio Casualty Ins. Co. v. Beckwith (C.C.A.) 74 F.(2d) 75; Maumee Valley Electric Co. v. City of Toledo (C.C.A.) 13 F.(2d) 98; American Equitable Assur. Co. of

New York v. Helvering (C.C.A.) 68 F. (2d) 46; Silver King Coalition Mines Co. v. Silver King C. M. Co. (C.C.A.) 204 F. 166, Ann.Cas.1918B, 571; Gooch v. Buford (C.C.A.) 262 F. 894; In re Wolf Mfg. Industries (C.C.A.) 56 F.(2d) 64; Michel v. American Fire & Casualty Co. (C.C.A.) 82 F.(2d) 583.

stated in a number of federal decisions that in the federal courts the law of the state, in which the suit is brought, governs the question whether the plaintiff's remedy is at law or in equity. Federal Surety Co. v. Minneapolis Steel & Machinery Co. (C.C. A.) 17 F.(2d) 242; Central Electric Co. v. Sprague Elec. Co. (C.C.A.) 120 F. 925; Duvall-Percival Trust Co. v. Jenkins (C.C. A.) 16 F.(2d) 223; Compagnie Francaise de Navigation a Vapeur v. Bonnasse (C.C. A.) 19 F.(2d) 777; North Alabama Development Co. v. Orman (C.C.A.) 55 F. 18; Fish v. First Natl. Bank of Seattle, Wash. (C.C.A.) 150 F. 524; Marks v. Kindel (C.C.A.) 41 F.(2d) 584; In re Roth (D.C.) 272 F. 516; Warren County v. Southern Surety Co. (D.C.) 34 F.(2d) 168. Contra: Goodyear Shoe Machinery Co. v. Dancel (C.C.A.) 119 F. 692; Pittsburgh, C. & St. L. R. Co. v. Keokuk & H. Bridge Co. (C.C.A.) 68 F. 19; Collins Mfg. Co. v. Wickwire Spencer Steel Co. (D.C.) 14 F.(2d) 871. See, also, Cobb v. Interstate Mtge. Corp. (C.C.A.) 20 F.(2d) 786. For the most part these decisions rest upon the authority of Willard v. Wood, 135 U.S. 309, 10 S.Ct. 831, 34 L.Ed. 210; Id., 164 U. S. 502, 17 S.Ct. 176, 41 L.Ed. 531; Union Mutual Life Ins. Co. v. Hanford, 143 U.S. 187, 12 S.Ct. 437, 36 L.Ed. 118, and Johns v. Wilson, 180 U.S. 440, 21 S.Ct. 445, 45 L.Ed. 613. But the language of the Supreme Court in these cases should not be interpreted to mean that the dividing line between law and equity in the federal courts can be modified or changed by state law. It is not likely that the court intended to ignore the established rule, recognized both in earlier and later cases, that the dividing line between law and equity in the federal courts is to be determined by the jurisdiction in equity enjoyed by the High Court of Chancery in England at the time of the adoption of the Federal Constitution, Payne v. Hook, 7 Wall. 425, 19 L.Ed. 260; Henrietta Mills v. Rutherford County, 281 U.S. 121, 50 S.Ct. 270, 74 L.Ed. 737; Rose on Federal Procedure, § 196; and that the equitable jurisdiction of the federal courts cannot be limited or on the other hand extended over legal demands by state statute, Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 497, 43 S.Ct. 454, 67 L.Ed. 763. What was doubtless intended was that when the state law creates a new substantive right, as distinguished from a remedial right, it may be enforced in the federal court on the law or equity side, whichever is appropriate under the established usage. In this way substantive rights accorded to litigants by state law will be recognized without disturbing the established procedure of the federal courts. Scott v. Neely, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358; Cates v. Allen, 149 U.S. 451, 13 S.Ct. 883, 37 L.Ed. 804; Whitehead v. Shattuck, 138 U.S. 146, 11 S.Ct. 276, 34 L.Ed. 873; Union Pacific R. Co. v. Board of Commissioners (C.C.A.) 222 F. 651; McConihay v. Wright, 121 U.S. 201, 7 S. Ct. 940, 30 L.Ed. 932; Louisville & Nashville R. Co. v. Western Union Telegraph Co., 234 U.S. 369, 374, 34 S.Ct. 810, 58 L. Ed. 1356; Mississippi Mills v. Cohn, 150 U. S. 202, 14 S.Ct. 75, 37 L.Ed. 1052; Peck v. Ayers & Lord Tie Co. (C.C.A.) 116 F. 273; Barrett v. Twin City Power Co. (C.C.) 118 F. 861; Id. (C.C.A.) 126 F. 302, 305; Provisional Municipality v. Lehman (C.C.A.) 57 F. 324; National Surety Co. v. State Bank (C.C.A.) 120 F. 593, 61 L.R.A. 394; Gibson v. Victor Talking Machine Co. (D.C.) 232 F. 225.

Irrespective of state statute or decision, a suit in equity rather than a suit at law would be in accord with the historic division between these two procedural methods. A direct suit at law upon a contract by one who is not a party thereto was not allowed at common law because of lack of privity. There are three interested parties, and common-law procedure contemplates only two sides to a case, while equity can deal with any number of parties in a single suit in which the rights of all can be adjudged and the liability of the promisor can be limited to a single recovery. Williston on Contracts, §§ 358, 359. There has been no attempt in West Virginia to accord to a creditor beneficiary the right to recover against the promisor in a direct action at law; but the substantive right of recovery, enforceable in equity, has been recognized; and the federal court should likewise enforce the right in equity since that procedure is appropriate to settled federal practice. The pending case should be transferred to the equity docket and retried in accordance with this opinion.

Reversed and remanded.